The Cartersville Improvement, Gas and Water Company *v.* The Mayor and Aldermen of Cartersville.

1. Without the preliminary sanction of a popular vote, as required by the constitution, a municipal corporation cannot contract for a supply of gas on the credit of the city for a longer period than one year; and a contract which by its terms is to run for twenty years, each year's supply to be paid for quarterly during the year, is operative from year to year only so long as neither of the parties renounces or repudiates it. Either of them can terminate it at the end of any year, but so long as it stands and is complied with by one party, the other party must comply also.

2. While a city cannot exempt a gas company from municipal taxation, it can contract to pay for gas a stipulated sum per lamp, and in addition thereto, a sum for all the lamps supplied equivalent to the amount of taxes imposed upon the company, provided this additional sum is a fair and just allowance to compensate for the actual value of the light service, and the stipulation is *bona fide* and not in the nature of an evasion of the law prohibiting exemption from taxes.

3. The present action is not brought to recover money voluntarily paid as taxes, but for a balance due under the contract for lighting the city, this balance being measured in part by the amount of taxes assessed and collected by the municipal government from the gas company.                    *Judgment reversed.*

August 1ᶜ 1892.

Municipal corporation. Constitutional law. Contract. Taxation. Before Judge Attaway. City court of Cartersville. September term, 1891.

The declaration filed by the plaintiff was demurred to, and the demurrer sustained. The declaration alleged: The Mayor and Aldermen of the City of Cartersville, a municipal corporation, is indebted to petitioner $268.83 with interest, for on August 6, 1888, defendant and the Orient Illuminating Company entered into a contract, copy of which is attached, afterwards by mutual agreement amended, as appeared from resolutions adopted by defendant, copies of which are attached. After the date of the contract it was assigned by the illuminating company to petitioner with the knowledge and consent

of defendant, and petitioner thereby became entitled to all the rights of the illuminating company under the contract. The gas plant provided for in the contract was duly completed according to the contract and accepted by defendant, as shown by resolutions of defendant, copies of which are attached; and on May 1, 1889, the lights in the seventy-five public gas lamps on defendant's streets were turned on, and since that time and up to the present have been lit as prescribed by the contract. The defendant assessed petitioner's property for municipal taxation for 1890, levied a tax in favor of itself for that year, and in October, 1890, issued a tax *fi. fa.* against petitioner and proceeded to collect it, contrary to the provisions of the contract. But defendant found itself compelled by operation of law to levy and collect the tax, because of the constitutional prohibition against the exemption by the city of any property from municipal taxation. Petitioner, in pursuance of an agreement made between it and defendant on May 16, 1891, copy of which is attached, paid defendant $268.83 on May 23, 1891. The lights furnished to defendant by petitioner in the seventy-five lamp-posts were worth not only the $25 per post as specified in the contract, but also the additional sum of $10 per post, and the light so furnished was worth at least $275 (to wit, the amount of the taxes aforesaid) over and above the $25 per post; and defendant agreed in the contract to pay whatever amount in addition to the $25 per post defendant should collect from petitioner as taxes. By the second count it was alleged: Defendant is indebted to petitioner $268.83, for defendant having made the contract and adopted the resolution specified above, petitioner having furnished public lights as specified, and defendant having collected from petitioner the taxes mentioned and failed and refused to pay the amount thereof to petitioner after petitioner's demand

upon defendant therefor, petitioner becomes entitled to recover for public lighting, pursuant to the provisions of said contract, the same amount which it paid defendant for the taxes. By the third count it was alleged: Defendant is indebted to petitioner $468.75, for petitioner, pursuant to the contract, supplied for December, 1890, and January and February, 1891, gas-light for seventy-five lamp-posts on defendant's streets, for which defendant in said contract agreed to pay petitioner $25 per post, which became due on March 1, 1891, which defendant fails and refuses to pay, though demand for payment has been made.

The original contract referred to, dated August 6, 1888, so far as seems material, was: On or before March 1, 1889, the illuminating company would erect and have ready for operation in Cartersville, for the term of twenty years, or such further time as might be duly provided, a plant for the manufacture, distribution and sale of gas. It would erect the plant in accordance with certain specifications, etc., and lay and maintain pipes to the extent of not less than three and not more than four miles for distributing gas, and would provide, own and keep in repair fifty-iron lamp-posts with glass lamps thereon, and as many more as the city might from time to time desire to contract for, to be used for lighting the streets, etc. The illuminating company would furnish to the city gas-light to illuminate the streets by means of said posts and lamps for the term of twenty years from March 1, 1889, under certain provisions as to when the lamps were to be lighted, for $27 per year for each post. It would at no time charge the individuals of the city more than a specified rate. This agreement was made at the reduced prices mentioned, to the city and its inhabitants, because of and subject to the following considerations: The city would accept not less than fifty lamps at all times during the twenty years,

for $27 per lamp per year. If the number of public lamps used should equal seventy-five and be less than one hundred, then the city should pay $25 per post per year. The city should exempt or cause to be exempted from municipal taxation all the property of the illuminating company or its successors and assigns, for five years from March 1, 1889, or from the time when the plant should be completed, if prior thereto. If the city should at any time during the five years find itself obliged by the decree of any court, or by operation of law, to assess and collect a tax against the property mentioned, then the city agreed that, in consideration of the reduced prices at which the gas-light was to be furnished it and its citizens, it would pay or return to the illuminating company, its successors or assigns, all sums of money which it or they might have been obliged to pay, and which might have been levied or assessed against the property by the city in violation of the spirit of this contract. The illuminating company, its successors and assigns, to be at full liberty to organize, and intending forthwith to organize under the laws of Georgia, a corporation to be known as the Cartersville Improvement Gas & Water Company, and as soon as such organization is completed the illuminating company may and shall transfer and assign its contract for public lighting, and the franchises hereinbefore mentioned, to that corporation, which shall then assume the rights, privileges, etc. herein incumbent upon the illuminating company, and thereupon the latter shall be released therefrom, and the obligations of the city under this contract with the illuminating company shall then be and continue with the improvement, gas and water company, as fully and completely as if this contract had originally been made therewith. All the payments to be made by the city for gas lighting to be due and payable on the first day of December, March, June and September, respectively, of each year, etc.

The minutes of the special meeting of the mayor and aldermen of December 21, 1888, showed that an application by the petitioner, as assignee of the illuminating company, for an extension of the time for erecting the gas works under the contract, to the first of May, 1889, and that the time during which, by operation of law or any court, the parties to the contract might be prevented from proceeding thereunder, should be added to the time within which the gas and water company had to complete the works, was granted. Also, that a resolution was adopted that the city would take seventy-five gas posts and lights at $25 per post, instead of fifty at $27 per post. The minutes of the meeting of May 6, 1889, showed that a resolution was adopted, to the effect that in compliance with the contract the gas plant had been erected satisfactorily, and the gas was acceptable and of first class quality, and the city accepted the plant and gas as a *bona fide* compliance with the contract, the resolution not to bind the city in the event that in the future defects in the plant or quality of the gas should appear.

The agreement of May 16, 1891, was to the following effect: Whereas a controversy was pending between petitioner and defendant concerning certain clauses in the original contract above mentioned, respecting taxes which might thereafter become due to the city by petitioner; and whereas the petitioner had filed a bill for injunction and relief against defendant, and a hearing was had on an application for interlocutory restraining order, after which hearing the prayer for restraining order was refused; and whereas both parties to this agreement desired to reach a valid judicial decision on the validity of said clauses, and the city claimed, as taxes due from petitioner for 1890, $252 with interest, and petitioner claimed as due it from the city a certain amount for public lighting of the streets in excess of

the $252; and whereas it was apprehended by the parties that should petitioner except to the judgment mentioned and have the same reversed by the Supreme Court, said latter court might not decide the validity of said clauses in the contract: it was agreed that petitioner should pay the city the amount of its taxes for 1890, by the same being deducted from the amount the city owed petitioner for public lighting of the streets for December, 1890, and January and February, 1891, and the city should pay petitioner on the aforesaid amount the balance due after deducting the amount of taxes, and each party give the other a receipt accordingly; and that this payment and the action of the parties in making this contract should not estop either from making any contention in any litigation which might thereafter arise between them, which might but for said payment or but for this contract have been otherwise made; and that petitioner should. be at liberty to bring suit for the amount which it might pay the city for taxes, without being estopped by the payment of the same or this agreement, or anything done in consequence thereof, and the city should not by this agreement or the payment of the taxes, or anything done in pursuance thereof, be estopped from denying the validity of the tax exemption, or the city's rights to defend any action brought by the petitioner for the recovery of the amount paid for taxes; and that no action on the equitable petition mentioned above should have any effect upon the rights or remedies of either party to this contract, but such rights and remedies of the parties should stand the same as though the petition had not been filed, and as though the judgment denying the interlocutory injunction had not been rendered.

The demurrer was on the following grounds: (1) A misjoinder of causes of action; (2) the pretended contract of August 6, 1888, is not a legal, valid and binding

contract under the constitution and laws of Georgia, it not appearing that the mayor and aldermen for 1888 were authorized to make the contract creating said debt, without first submitting the question as to whether or not the debt should be created to the legally qualified voters of said city, and therefore no legal cause of action can be maintained under the pretended contract; (3) the mayor and aldermen had no legal power or authority to enter into the pretended contract of August 6, 1888, whereby the property of plaintiff could be exempted from municipal taxation, and whereby plaintiff was to be indemnified by the mayor and aldermen for municipal taxes for five years, which plaintiff might be required to pay under the constitution and laws of Georgia; (4) no legal cause of action is set out in the declaration; (5) no legal cause of action can be maintained against defendant for recovering the municipal taxes paid by plaintiff to defendant.

JOHN W. AKIN, for plaintiff.
JAMES B. CONYERS, for defendant.