Monroe Water Works Co. vs. City of Monroe.

MONROE WATER WORKS COMPANY, Appellant, vs. CITY OF MONROE, Respondent.

*March 19 — April 9, 1901.*

*Municipal corporations: Waterworks: Contracts: Exclusive franchise: Ultra vires: Exemption from taxation: Ordinance: Definiteness: Waiver: Estoppel: Appeal from disallowance by council: Evidence: Custom.*

1. The fact that a contract between a city and a water company is *ultra vires* in so far as it grants an exclusive franchise is not available as a defense in an action by the water company to recover back taxes alleged to have been levied and collected in violation of said contract. [Whether in the absence of legislative grant a city has power to grant exclusive franchises, not determined.]

2. A provision in such contract that the city should pay for water for municipal purposes a sum, in addition to hydrant rentals, equal to the amount of all taxes levied on certain parts of the company's plant, expressly contemplates the payment of taxes, and is therefore not invalid as an exemption from taxation.

3. A provision in a contract between a city and a water company that the former should pay, in addition to hydrant rentals, a sum equal to the amount of all taxes assessed on such portions of the plant as were located on streets and public grounds, is *held* incapable of enforcement, since taxes must be assessed in a lump sum on all the property of such a company, including its franchises, and, by the terms of the contract, no satisfactory basis of apportionment is furnished.

4. Where for over six years a city paid a water company the semiannual hydrant rentals due under its contract, and made no com-

12    SUPREME COURT OF WISCONSIN.    [110

Monroe Water Works Co. vs. City of Monroe.

plaint as to the character of the services rendered, although it had full knowledge of the imperfect character thereof, such conduct amounts to a waiver of a known right, and precludes the city from recovering damages based on such insufficient service.

5. Where the service to be performed is continuous, and its proper performance is a condition precedent to a right of action, and the act as performed is defective and imperfect, if the adverse party takes no objection to the manner of its performance, but pays the stipulated price, he cannot afterwards be permitted to reclaim the rights he has thereby waived.

6. Sec. 48, ch. 238, Laws of 1882, provides that when a claim has been disallowed by the common council of the city of Monroe and an appeal taken, such appeal shall be tried in the same manner as appeals from justices of the peace; and sec. 3768, Stats. 1898, provides that certain actions appealed from justices of the peace shall be tried in the appellate court as actions originally brought therein. *Held*, that when the conditions on an appeal from the action of the city council are such that a new trial in the circuit court is allowed, it is permissible to interpose a proper counterclaim.

7. Where a water company brought an action against a city, and the city set up a counterclaim for inadequate service at fires, the admission of evidence of inadequate service prior to the date from which recovery was sought, and also after the action was brought, cannot be justified on the ground that it showed habit, or custom, or course of conduct existing for a long time, it appearing from the city's bill of particulars that for a portion of those times no serious complaint was made.

APPEAL from a judgment of the circuit court for Green county: B. F. DUNWIDDIE, Circuit Judge. *Reversed.*

In the year 1889 the common council of the city of *Monroe* granted a franchise to construct and operate a system of waterworks in said city to one W. H. Wheeler, granting an exclusive right for a period of twenty years. The ordinance granting the franchise prescribed at length and with particularity the kind of plant that should be erected, the kind, size, and number of miles of pipe that should be used, the manner in which it should be laid, the number of hydrants for fire protection, and how they were to be located, with many other conditions deemed necessary for its instal-

lation. The grantee agreed to keep the hydrants supplied with water for fire service day and night, and keep them in good order. The city agreed to pay for such fire protection. $4,500 in semi-annual instalments on 1st days of February and August of each year. The city was also to have the free use of hydrants for flushing gutters and sewers, and free water for public schools and other city buildings, for certain drinking fountains, and for sprinkling purposes. In consideration for such service the city also agreed "to pay each year to said grantee, in addition to the hydrant rentals herein specified, a sum equal to the amount of state, county, and city taxes which may be levied upon such portions of said waterworks plant as is located on the streets and public grounds." Certain rates of charges were fixed for private consumers. Tests for a water supply were to be made and approved by the city, and before the works were accepted the plant was required to meet certain conditions prescribed. The ordinance contained other details of no importance in this litigation. The ordinance was accepted by Wheeler, and afterwards the plaintiff corporation was organized, which succeeded to his rights. The system was duly built, tested, and accepted. The pumping station was located on certain lots owned by the company. The standpipe was located in the city park, and the pipes, hydrants, and fountains were distributed in the streets and public grounds. From year to year down to the time of the commencement of this action, the city has paid the semi-annual instalments for hydrant rentals as they became due without protest. During the years 1890 to 1895, inclusive, the city levied taxes only on the real estate upon which the pumping station was located, the annual valuation being $4,000, except in the year 1894 the value was increased to $4,500, and in 1895 to $6,000. In 1898 the city assessed the entire system, including franchises, rights, privileges, real estate, pipes, hydrants, etc., at the gross sum of $30,000,

against which a tax was levied amounting to $642.08, which sum the water company was required to and did pay. Thereafter, basing its right upon that portion of the ordinance above quoted, the plaintiff presented a claim to the city council, claiming that its real estate was about one sixth of the whole value of the system of waterworks, and that the portion in the streets and public grounds was five sixths, and demanding that the city pay in the sum of $535.05, as being the proper portion of the taxes levied as aforesaid. The claim was disallowed, and an appeal was taken to the circuit court. That court directed an issue to be made by complaint and answer. The plaintiff filed a complaint, setting out the facts substantially as stated. The answer contained sundry admissions and denials, with allegations that the stipulations in the ordinance regarding the payment of a sum by the city equivalent to the taxes on that part of its plant on the streets and public grounds was tantamount to and was an agreement to exempt said property from taxation, and therefore void; that it was impossible to determine or apportion the values of the different portions of said plant, but, on the contrary, the plant was entire and inseparable and must be treated as an entirety for the purpose of taxation; that the attempt to grant an exclusive franchise was contrary to public policy and void. It then set up a counterclaim, claiming, among other things, that during the six years last past the plaintiff had neglected to provide modern appliances and to adopt proper means to secure direct fire pressure in cases of fires, and had so mismanaged its works and neglected to keep its hydrants in order that at a number of fires mentioned the fire pressure was wholly inadequate, and the said system afforded no protection to the property of the city, and in consequence thereof property of the citizens of the city had been destroyed of the value of $20,000, for which they had no remedy under the laws of this state; that the standpipe was of inadequate ca-

pacity and not properly equipped or kept in repair, direct pressure was not secured until after great delay, and generally the plant was carelessly and negligently handled. There being no other system in the city, rents had been paid although the value of the service rendered did not exceed $2,000 per year. Damages to the amount of $15,000 were demanded. A motion to strike out the counterclaim was denied. A reply was served, consisting of denials and an allegation of voluntary payment of rentals with full knowledge of the facts. A bill of particulars was filed by defendant, which set out in detail its grievances.

The jury rendered the following special verdict:

"(1) What is the relative value of that portion of the waterworks plant of the plaintiff located in the streets and public grounds of the defendant, as compared with the value of the whole of said waterworks plant ? A. Eighty-three per cent.

"(2) Did the plaintiff, during the six years prior to February 7, 1900, furnish to the city of *Monroe* such a supply of water and such pressure as were reasonably adequate for the extinguishment of fires, if properly used by the city ? A. No.

"(3) In case your answer to the last question is 'No,' you may state what the difference is between the value of the supply of water and pressure actually furnished to the city by the plaintiff, and that which should have been furnished on the basis of the contract price, in order to afford reasonably adequate protection from fire. A. $326.40 yearly for six years,— $1,958.40."

Plaintiff's motion for a new trial was denied, and defendant's motion for judgment was granted. Judgment was accordingly entered on defendant's counterclaim for $1,958.40 damages, besides costs, and the plaintiff's cause of action was dismissed. Plaintiff appeals.

For the appellant there were briefs by *Jackson & Jackson* and *P. J. Clawson*, and oral argument by *A. A. Jackson* and *M. G. Jeffris*.

For the respondent there was a brief by *Collin W. Wright*

and *Jones & Stevens*, and oral argument by *B. W. Jones*. To the point that by the overwhelming weight of authority municipalities have no implied power to grant exclusive privileges to corporations of the character of waterworks companies, they cited *Greenville W. W. Co. v. Greenville*, 7 So. Rep. 409; *Illinois T. & S. Bank v. Arkansas City W. Co.* 67 Fed. Rep. 196, 200; *Davenport v. Kleinschmidt*, 8 Mont. 467; *Brenham v. Brenham W. Co.* 67 Tex. 542; *Long v. Duluth*, 49 Minn. 280; *Smith v. Westerly*, 19 R. I. 437; *Gas Co. v. Parkersburg*, 30 W. Va. 435; *State ex rel Att'y Gen. v. Cincinnati G. L. & C. Co.* 18 Ohio St. 262, 291; *Richmond C. G. L. Co. v. Middleton*, 59 N. Y. 228; *Appeal of Meadville F. G. L. Co.* 4 Atl. Rep. 733; *Saginaw G. L. Co. v. Saginaw*, 28 Fed. Rep. 529, 535; *New Orleans C. R. Co. v. Crescent C. R. Co.* 12 Fed. Rep. 308; *Jackson C. H. R. Co. v. Interstate R. T. Co.* 24 Fed. Rep. 306, 310; *Davis v. New York*, 14 N. Y. 506; *Milhau v. Sharp*, 27 N. Y. 611; *Montjoy v. Pillow*, 64 Miss. 705; *Minturn v. Larue*, 23 How. 435; *Flynn v. Little Falls E. & W. Co.* 74 Minn. 180; *Goose R. Bank v. Willow Lake S. Tp.* 1 N. Dak. 26; *Smith v. Newburgh*, 77 N. Y. 130, 136; *McBrian v. Grand Rapids*, 56 Mich. 95; *Parr v. Greenbush*, 72 N. Y. 463, 472; *Litchfield v. Ballou*, 114 U. S. 190, 192; *Thomas v. Richmond*, 12 Wall. 349; Dillon, Mun. Corp. (4th ed.), § 459 *et seq.; Niles W. W. Co. v. Niles*, 59 Mich. 311.

BARDEEN, J. As regards the plaintiff's right of recovery, the record furnishes no information as to the grounds upon which it was denied. The argument by the defendant in this court is that the ordinance is void (1) because it purports to create an exclusive franchise for twenty years; (2) because it is in effect an agreement to exempt plaintiff's property from taxation; (3) because that part of it sued on is so indefinite and uncertain as to furnish no basis for a recovery.

1. The ordinance in question gives the plaintiff an exclu-

sive right to erect, maintain, and operate a system of water-
works in the defendant city for a period of twenty years.
We may concede, without so deciding, that as a rule the
legislature alone has the power to make exclusive grants of
this character, and that this power does not exist in the city
unless expressly granted to it by its charter or some law of
the state.   Our attention has not been called to any such
grant of power, and we may assume that it does not exist.
The city had authority from the legislature to grant a fran-
chise to a person or corporation to furnish it and its inhab-
itants with water.  If it had no right to make the grant
exclusive, it was at most *ultra vires*.   The plaintiff has ac-
cepted the grant.   It has constructed an expensive system
of waterworks.   For over eight years the city has been the
recipient of substantial benefits thereunder, and from year
to year has paid its rental dues.   The exclusiveness of the
right to use the streets was granted for the sole benefit of
the water company.   If it does not receive this benefit, the
city loses nothing.   Quoting from the opinion of Judge
Sanborn in a similar case (*Illinois T. & S. Bank v. Arkan-
sas City*, 76 Fed. Rep. 271):

" The grant of this exclusive right was neither immoral nor
illegal.  It was merely *ultra vires*.  We know of no rule of law
or morals which relieves the recipient of the substantial ben-
efits of a partially executed contract from the obligation to
perform or pay that part of the consideration which he can
perform or pay, because the performance of an insignificant
portion of it is beyond his powers.   On the other hand, the
true rule is, and ought to be, the converse of that proposi-
tion.   It is that when a part of a divisible contract is *ultra
vires*, but neither *malum in se* nor *malum prohibitum*, the
remainder may be enforced, unless it appears from a con-
sideration of the whole contract that it would not have been
made independently of the part which is void,"— citing
*Oregon S. N. Co. v. Winsor*, 20 Wall. 64; *Reagan v. Farm-
ers' L. & T. Co.* 154 U. S. 362; *Western Union Tel. Co. v.
B. & S. W. R. Co.* 11 Fed. Rep. 1; *Saginaw G. L. Co. v. Sag-
inaw*, 28 Fed. Rep. 529.

The supreme court of Iowa carry the rule so far as to say that the validity of an ordinance giving the exclusive privilege for a term of years of laying water pipes in the streets, etc., can be contested only by some other company or individual afterwards claiming such right. *Grant v. Davenport,* 36 Iowa, 396. Whatever the true rule may be, the discussion of the point at issue in the case in 76 Fed. Rep. 271, meets every argument urged here, and most clearly demonstrates that the city is in no position to avail itself of the objection urged.

2. Does the ordinance amount to an agreement to exempt the plaintiff's property from taxation? An agreement for immunity from taxation will not be recognized, unless couched in terms too plain to be mistaken. *Chicago, B. & K. C. R. Co. v. Guffey,* 120 U. S. 569. Where, however, the agreement is express, and the intention evident, to exempt property and release it from tax burdens, it is void and will not be enforced. *Little Falls E. & W. Co. v. Little Falls,* 74 Minn. 197; *State v. H. & St. J. R. Co.* 75 Mo. 208. Many other cases might be added, but the rule is so generally recognized that further citation is not necessary. The rule is equally well established that it is competent for a city and a company to agree that, as the price of services to be rendered, the city will pay a sum equal to the amount of municipal taxes to be levied. *Ludington W. S. Co. v. Ludington,* 119 Mich. 480; *Cartersville I. G. & W. Co. v. Cartersville,* 89 Ga. 683; *Grant v. Davenport,* 36 Iowa, 397. Of course, it must appear that the sum so stipulated to be paid is a fair and just allowance to compensate for the actual value of the services to be rendered, and that the stipulation is *bona fide,* and not in the nature of an evasion of the law against exemption from taxes. The stipulation in this case is not subject to this objection. The water company agrees to furnish water for flushing gutters and sewers; also for school and public buildings, drinking and display foun-

Monroe Water Works Co. vs. City of Monroe.

tains, and for sprinkling streets in the business portion of the city. In consideration thereof, the city is to pay annually a sum equal to certain taxes to be levied. There is nothing in this arrangement that we can perceive suggesting any exemption from assessment or taxation. On the contrary, it expressly contemplates the levy of a tax, and provides merely that, in addition to hydrant rents, the city shall pay a varying sum for the other services mentioned. If the agreement is sufficiently definite to be enforced, no reason is apparent why the city should not live up to its agreement.

3. Is the part of the ordinance sued upon sufficiently definite that it may be enforced? The clause in question reads as follows:

" The city agrees to pay each year to said grantee, in addition to the hydrant rentals herein stipulated, a sum equal to the amount of state, county, and city taxes which may be levied upon such portion of said waterworks plant as is located on the streets and public grounds."

Up to the year 1898 taxes were levied only upon the real estate and pumping station, at a valuation varying from $4,000 to $6,000. That year the assessor assessed all the franchises, rights and privileges, real estate, machinery, standpipe, water mains, hydrants, fountains, and all other property of the company as an entirety, at a lump sum of $30,000. This was done, presumably, in pursuance of the law as established by this court in the cases of *Yellow River Imp. Co. v. Wood Co.* 81 Wis. 554; *Fond du Lac W. Co. v. Fond du Lac*, 82 Wis. 322; and *State ex rel. Milwaukee St. R. Co. v. Anderson*, 90 Wis. 550, which was later confirmed by distinct legislative enactment. Sec. 1037a, Stats. 1898. These cases recognized the fact that franchises are property, and possess a value capable of being estimated, and are liable to taxation in the place where the corporation does business, and may be assessed for that purpose as a part of the aggregate

Monroe Water Works Co. vs. City of Monroe.

corporate property. That was done in this case, and no contest is made as to the practical plan adopted. The fact that such franchises and privileges are of substantial value, and were included in the aggregate valuation of plaintiff's property, does not seem to have been appreciated or considered on the trial of this case. Testimony was offered as to the relative value of that portion of the waterworks plant located in the streets and public grounds, as compared with the value of the whole plant, regardless of the value of plaintiff's franchises, and the jury found such relative value to be eighty-three per cent. It is upon this foundation that plaintiff insists upon a right of recovery. Obviously this contention cannot be sustained. Such a basis of division would be false and unjust. The original agreement was evidently based upon the theory that the company's property was divisible — separable — for the purposes of taxation. Under the present rule of assessment, no taxes are or can be separately levied on that portion of the plant situated in the streets. We have no right to say, or permit the plaintiff to say, that the intention was to require the city to pay according to the relative value of the different portions of the plant, independent of the franchise interest. The difficulty of arriving at any satisfactory basis of apportionment according to the terms of the ordinance, in view of the rule of assessment, seems insuperable. It arises from the difficulty of separating the property of the corporation from its franchises. This difficulty is noted and commented upon in *Chicago, M. & St. P. R. Co. v. Milwaukee,* 89 Wis. 506, and *State ex rel. Milwaukee St. R. Co. v. Anderson, supra.* To adopt the rule contended for would be to make for the parties a scheme they did not make for themselves. As at present advised, we see no basis furnished by the ordinance authorizing its enforcement as to the part in question. See *Detroit Citizens' St. R. Co. v. Common Council of Detroit* (Mich.), 85 N. W. Rep. 96.

We now come to the question of the defendant's counter-claim. It is based entirely upon the alleged failure of the company to furnish adequate fire pressure in times of fires during the six years immediately preceding the commencement of this action. The jury found that the difference in value between the supply furnished and that which should have been furnished was $326.40 for each year. The plaintiff urgently insists that under the circumstances in proof no recovery can or should be permitted on behalf of the city. This is based upon the admitted facts, among other things, that the plant was constructed according to the requirements of the ordinance and was accepted by the city, and that services had been continuously rendered and regularly paid for without objection or protest. The obligation of the company was to furnish the city with water, accompanied with the service and use of its plant in a particular way. Its duty required it to keep its plant in reasonably good repair, to use reasonable diligence in keeping its appliances and agencies in readiness for emergency use, and to furnish such fire pressure as might reasonably be expected from the character of the plant, size of pipes, and the like. The only complaint made against the company was that, in case of a few fires, instanced by the witnesses, there was some delay in securing fire pressure, and at times, in their opinion, the pressure was not sufficiently strong, or, as found by the jury, not "reasonably adequate for the extinguishment of fires." In other words, the ground of complaint arose from failure to render service in the way pointed out in the ordinance. The alleged delinquency arose, not from that portion of the service here sought to be enforced, but from past services which had been accepted and paid for in semi-annual instalments. The right of the city to recover is not based upon any loss or damage to city property, nor is it alleged or proven that it has suffered any direct pecuniary injury. Its claim is based entirely upon the alleged

inadequacy of the service rendered. It is shown conclu-
sively that the city knew of such imperfect service at the
time so rendered, and also when called upon to pay the bills
presented. It never gave official notice or made any claim
that such services were not performed in accordance with the
ordinance. Regularly each six months it paid the amount
stipulated without protest, and as in full settlement of six
months' service theretofore rendered. It knew that the
company claimed full performance. The character of the
service was such that, if notice had been given of the spe-
cific ground of complaint, it could easily have been rem-
edied. The company was bound to reasonably diligent
service. Notice that the city claimed lack of diligence
would undoubtedly have spurred the company to greater
promptness. If the pressure was not deemed adequate, a
suggestion to that effect would have commanded immediate
response. The machinery, appliances, and agencies in use
by the company had been tested and accepted by the city.
If the city claimed that other or better means should have
been employed, ordinary good faith demanded that such
claim should have been made known to the company. From
year to year during the period mentioned the company per-
formed its service under the belief it had complied with its
obligations, and each recurring six months the city paid in
full therefor without protest and with full knowledge of the
situation. If it be admitted, as is held in some of the cases
elsewhere, that the city had a substantial claim for damages
which it might enforce, still we do not see how it is now in
a position to do so in this case. The facts show as clear and
distinct a case of waiver as could well be imagined. "A
waiver is the intentional relinquishment of a known right."
28 Am. & Eng. Ency. of Law, 526. It may be proved by
various species of evidence,— by declarations, by acts, or by
forbearance to act. *Fishback v. G. W. Van Dusen & Co.* 33
Minn. 111. The notice or intention of an act, in most cases,

is a matter of inference, to be deduced with more or less certainty from the external and visible acts and conduct of the party. It is to be ascertained and interpreted in the light of the accompanying circumstances of the particular transaction. *Traynor v. Johnson*, 1 Head, 51. It may be conceded that the furnishing of water in accordance with the conditions and requirements of the ordinance was a condition precedent to the right of the company to demand payment therefor. Where the service to be performed is continuous, and its proper performance is a condition precedent to a right of action, and the act as performed is defective and imperfect, if the adverse party takes no objection to the manner of its performance, but pays the stipulated price, he cannot afterwards be permitted to reclaim or rejuvenate the rights thus waived. Especially ought this to be true in a case for continuous service to be satisfied by periodical payments, where notice of the claim of defective performance would probably lead to a correction of the alleged defects in the future. This rule rests upon the ground that the party by his silence has misled his adversary, and, not having spoken when he ought, shall not be permitted to speak when he would. See *Johnson v. Oppenheim*, 55 N. Y. 280. The cases where the doctrine of waiver has been invoked are numerous and varied. In *Prussing V. Co. v. Meyer*, 26 Ill. App. 564, a master credited his servant with full time and settled with him on that basis, giving a promissory note. Suit being brought on the note, the master sought to set off time lost by the servant. This right was denied on the ground, among others, that defendant had waived performance. This case is cited and approved by this court in *Dickinson v. Norwegian P. Co.* 101 Wis. 157, where a counterclaim was sought to be enforced for time lost, after there had been a statement of account and a settlement between the parties. The counterclaim was disallowed. Another case somewhat more remote in its application is

*Raipe v. Gorrell*, 105 Wis. 636.   A counterclaim for loss of time was denied enforcement, and the principle that, if one has paid money to another without mistake or fraud, he cannot reclaim it, was invoked and applied.   Cases sustaining this rule are numerous, many of which are cited in the brief of plaintiff.   The following in this state are in point: *Van Buren v. Downing*, 41 Wis. 122; *Noyes v. State*, 46 Wis. 250; *Custin v. Viroqua*, 67 Wis. 314.   See *Locke v. Williamson*, 40 Wis. 377.   Defendant's counterclaim in effect seeks to reclaim such parts of the sum it has paid for water service as it believes it was worth less than the stipulated price. It may be called damages or any other name of like import, yet the result is the same.   It is nothing more nor less than a reclamation of a portion of the stipulated price, paid voluntarily, with full knowledge of the facts and under such circumstances as to lead the plaintiff to believe the transaction to be a settlement of its claims.   Upon either of the grounds stated we are convinced that the defendant is now precluded from urging an affirmative demand against the plaintiff upon the alleged cause of action set up in the answer.   In reaching this conclusion we have purposely omitted to consider whether the relations between the water company and city are such that the latter may or may not, on its own behalf, institute and maintain active proceedings based upon such relations.   We have proceeded upon the assumption that, if it could, still it had shown no right to recovery.   Our discussion is not to be considered either as an admission or denial of the right.

There are other minor questions urged against defendant's recovery.   One is that a counterclaim is not permissible in cases appealed from city councils.   Sec. 48, ch. 238, Laws of 1882 (defendant's charter), provides that, when a claim has been disallowed and an appeal taken, "such appeal shall be entered, tried, and determined in the same manner as appeals from justice of the peace," etc.   Sec. 3768,

Stats. 1898, provides that certain actions shall be tried in the appellate court as actions originally brought there. No good reason is perceived why a proper counterclaim may not be interposed in cases appealed from city councils, when the conditions are such that a new trial in the appellate court is permissible.

Another ground of complaint is that evidence was admitted of inadequate fire pressure at fires occurring more than six years prior to the date from which recovery was sought, and also after the controversy had gotten into court. We have grave doubts of the admissibility of this evidence. The real issue was the manner and kind of service furnished during the period for which a recovery was claimed. Imperfect service or want of due diligence at other times would not necessarily sustain the cause of action sought to be enforced, and might be distinctly prejudicial to the other side. It cannot be justified on the ground of showing a habit or custom or course of conduct existing for a long time, because, according to the bill of particulars, there was a period from 1891 to 1895 that no serious complaint was made.

The other objections urged are not of sufficient importance to require attention.

*By the Court.*— The judgment is reversed, and the cause is remanded for a new trial.