EHRLICH and others, d/b/a GREATER NORTH BAY LAND
COMPANY, Respondents, v. CITY OF RACINE, Appellant.

*January 6—February 2, 1965.*

For the appellant there were briefs and oral argument by *Jack Harvey,* city attorney.

For the respondents there was a brief by *Brown & Black* of Racine, and oral argument by *Harley Brown.*

GORDON, J.   The contract, which was entered into voluntarily by the city of Racine, is now challenged by that municipality as being violative of sec. 1, art. VIII of the Wisconsin constitution, which provides that: "The rule of taxation shall be uniform . . ." The objective of this clause has been interpreted to be "to protect the citizen against unequal, and consequently unjust taxation." *Weeks v. Milwaukee* (1860), 10 Wis. 186 (*242), 201 (*257).

The primary issue before us is whether the technique used in paragraph B, which is quoted above, offends the uniformity requirement of the state constitution.

When the legislature attempted to establish a reduced tax rate for agricultural lands, this court held the effort void. *Knowlton v. Supervisors of Rock County* (1859), 9 Wis. 378 (\*410). The legislature can, with uniformity, exempt property from taxes, but it cannot partially exempt particular property. "There cannot be any medium ground between absolute exemption and uniform taxation," said the court in *Knowlton v. Supervisors of Rock County, supra,* at page 392 (\*424). If the legislature is constrained by this constitutional restriction, then *a fortiori* a municipality is also bound by it.

In examining the contract, and particularly paragraph B, we conclude that it provides for a partial exemption from taxes of the plaintiffs' land. To be sure, such tax preference is accomplished by indirection; it requires the plaintiffs to pay the same assessment that other landowners pay, but under the provisions of this contract, the plaintiffs are subsequently entitled to what amounts to a rebate. We are unable to give judicial absolution to a two-stage tax differential which would be a constitutional transgression if done in one stage. In *Earles v. Wells* (1896), 94 Wis. 285, 299, 68 N. W. 964, this court said:

"The method by which the attempt was made may be regarded as ingenious, but it should be remembered, as indicated by one of the cases cited, that the city could not do by indirection what it could not do directly."

In finding the contract valid, the trial court relied primarily upon *Monroe Water Works Co. v. Monroe* (1901), 110 Wis. 11, 85 N. W. 685, and the plaintiffs urge that we should affirm on the basis of that case. In the *Monroe Case,* at page 18, the court stated:

"The rule is equally well established that it is competent for a city and a company to agree that, as the price of services to be rendered, the city will pay a sum equal to the amount of municipal taxes to be levied. *Ludington W. S. Co. v. Ludington,* 119 Mich. 480; *Cartersville I. G. & W. Co. v. Cartersville,* 89 Ga. 683; *Grant v. Davenport,* 36 Iowa 397. Of course, it must appear that the sum so stipulated to be paid is a fair and just allowance to compensate for the actual value of the services to be rendered, and that the stipulation is *bona fide,* and not in the nature of an evasion of the law against exemption from taxes. The stipulation in this case is not subject to this objection. The water company agrees to furnish water for flushing gutters and sewers; also for school and public buildings, drinking and display fountains, and for sprinkling streets in the business portion of the city. In consideration thereof, the city is to pay annually a sum equal to certain taxes to be levied. There is nothing in this arrangement that we can perceive suggesting any exemption from assessment or taxation. On the contrary, it expressly contemplates the levy of a tax, and provides merely that, in addition to hydrant rents, the city shall pay a varying sum for the other services mentioned. If the agreement is sufficiently definite to be enforced, no reason is apparent why the city should not live up to its agreement."

By its own terms, the *Monroe Case* applied to a situation in which services were to be rendered and, thus, is distinguishable from the facts in the instant case. In the case at bar, the consideration to the city of Racine was twofold: The land in question was annexed to the city, and the city received an easement for a storm sewer. Neither part of this consideration is comparable to the continuing services in *Monroe.*

The reasoning of the Virginia court in *Richmond v. Virginia Railway & Power Co.* (1919), 124 Va. 529, 542, 98 S. E. 691, is applicable, even to the extent of having a special category when the consideration consists of services to the city:

"No authority has been cited before us extending the doctrine of the cases next above discussed to the point of holding that a municipality may, for any other valuable consideration than services to it such as aforesaid, contract away its taxing power and that such contract will be held not to be a tax exemption. And on principle, it will be at once perceived that such a broad power of contract would annul all constitutional provisions against exemption of property from taxation. It is not a question of the presence or absence of a valuable consideration to support tax exemptions against which such constitutional provisions are directed. There has seldom, if ever, arisen a case of tax exemption where such a consideration was not supposed by the taxing authority to exist at the time, and a supposedly sufficient consideration. But the evil of allowing such a power to exist, even in the legislature, is so manifest, that the rules of construction applicable to every alleged tax relinquishment, above adverted to, and the constitutional inhibitions which are now in force in Virginia against the exercise of such a power, have been adopted, and have their foundation deep-seated in principles which are immutable under our form of government."

In our opinion, the Wisconsin constitutional requirement is clear, and the contract in question patently contravenes it. Mr. Justice HOLMES said, "But whatever the consequences we must accept the plain meaning of plain words." *United States v. Brown* (1907), 206 U. S. 240, 244, 27 Sup. Ct. 620, 51 L. Ed. 1046. We conclude that the plaintiffs' reliance upon the *Monroe Case* is unavailing. We are mindful that a number of other states have expressed rules comparable to that of *Monroe*. See *Portland Water Co. v. Portland* (1922), 97 Conn. 628, 118 Atl. 84; *Water Co. v. Waterville* (1900), 93 Me. 586, 45 Atl. 830, 49 L. R. A. 294; *Water Supply Co. v. Ludington* (1899), 119 Mich. 480, 78 N. W. 558; *Cartersville Improvement Gas & Water Co. v. Mayor* (1892), 89 Ga. 683, 16 S. E. 25; *Grant v. Davenport* (1873), 36 Iowa 396.

The Minnesota supreme court has expressed itself in a vein contrary to the *Monroe* holding. Its ruling in *Little Falls Electric & Water Co. v. Little Falls* (1898), 74 Minn. 197, 77 N. W. 40, was cited in the *Monroe* opinion. The following is the view of the Minnesota court (p. 199) which supports us in our determination not to expand the doctrine of the *Monroe Case*:

"This substitute for taxes has no relation to the value of the property in money, and would evidently result in want of uniformity and equality of taxation.

"The city had no authority to exempt this property from taxation or to commute the tax by accepting services in lieu of it. If a municipality can bind itself by any such contract, it would result in bartering away its taxing power. We may go further, and say that under the constitution the legislature itself could not grant a city authority to make any such contract. If a city could make such contracts, it is easy to see how, under the guise of contracts for the performance of some public service, the city council could relieve much private property from a large part of its just share of the burden of taxation for city purposes."

But cf. *Phoenix v. Landrum & Mills Realty Co.* (1951), 71 Ariz. 382, 227 Pac. (2d) 1011.

In view of our conclusion that the contract was void under the constitution, we agree with the city's contention that the city is not barred from challenging the contract by reason of estoppel or by reason of sec. 66.13, Stats. The latter section provides that actions to test the validity of municipal contracts must be commenced within sixty days after being signed. *Kiel v. Frank Shoe Mfg. Co.* (1942), 240 Wis. 594, 597, 4 N. W. (2d) 117.

The plaintiffs challenge the city's right to retain the benefits of the contract if the court is to accept the city's contention that the agreement is unconstitutional. The plaintiffs have put forth numerous perplexing questions which arise

once the contract is held to be unconstitutional. Can the city retain the easement? Is there to be a reconveyance and a removal of the sewer? May the landowners petition to have the property detached from the city? Is there to be a refund of the damages heretofore paid under this invalid contract?

We acknowledge that the resolution of these questions is not easy. A persuasive argument is made that the city should not be permitted to retain the benefits of the annexation and of the easement. On the other hand, it may be contended that the city is entitled to repayment of $12,391.35 which had been paid by the city to the plaintiffs during the first three years of the contract.

It is our conclusion that the parties should be left where this court finds them. In other words, the contract being unconstitutional, it cannot be enforced. However, since the parties must be considered equally responsible for entering into this agreement and performing under it *pro tanto,* neither side is entitled to judicial intervention with reference to activities which were previously consummated under the agreement.

In this respect, our position is like that of the Montana court in *Builders' Supply Co. v. Helena* (1944), 116 Mont. 368, 378, 154 Pac. (2d) 270, where it was decided:

"When the statute does not otherwise provide, transactions contrary to its provisions are void and the courts will not lend their assistance to the parties, but will leave them where they have placed themselves unlawfully."

The appellant is entitled to its costs upon this appeal.

*By the Court.*—Judgment reversed.