Ronald L. CORNWELL, and Town of Hull, Plaintiffs-Appellants,†

v.

CITY OF STEVENS POINT, the State of Wisconsin, and the Bill Cook Chapter of the Izaak Walton League of America, Inc., Defendants-Respondents.

Court of Appeals

*No. 90–0124. Oral argument September 19, 1990.—Decided November 8, 1990.*

(Also reported in 464 N.W.2d 33.)

†Petition to review denied.

For the plaintiffs-appellant the cause was orally argued by *Roger W. Clark* of *Herrling, Clark, Hartzheim & Siddall, Ltd.* of Appleton.

For the defendant-respondent the cause was orally argued by *Robert J. Shannon* of *Anderson, Shannon, O'Brien, Rice & Bertz* and *Louis J. Molepske* of *Louis J. Molepske Law Office* of Stevens Point.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J. The Town of Hull and Ronald Cornwell, a Stevens Point taxpayer, appeal from a summary judgment dismissing their claim against the City of Stevens Point and the Bill Cook Chapter of the Izaak Walton League (IWL). Cornwell and the town sued to invalidate an annexation of certain lands owned by IWL to the city. The annexation was accomplished pursuant to an agreement between IWL and the city. The agreement provided that, in exchange for IWL's petition for annexation and its consent to allow the city access to groundwater flowing under the land, the city agreed to reimburse IWL for all property taxes on the land.

The issue is whether the contract between IWL and the city violates the uniform taxation clause of the Wisconsin Constitution. We conclude that it does. However, under the rule of *Ehrlich v. Racine,* 26 Wis. 2d 352, 132 N.W.2d 489 (1965), while we declare the contract invalid, we do not void the annexation.

The facts are not disputed. IWL owns property located just west of the city's municipal water wells. The land lies atop a large groundwater aquifer, and the property has been used for many years as the headquarters and clubhouse of the local IWL chapter.

The city and IWL executed a contract providing that IWL would petition to have its land annexed to the city, promising not to develop the land (thereby helping to prevent pollution of the city's nearby water supply) and granting the city the right to pump the groundwater for use in its municipal water system. There is no question that the city needs additional sources of clean water. In exchange, the city agreed to reimburse IWL for all real estate taxes payable on the property each year. The agreement was to run for ninety-nine years.

In summary judgment cases, we employ the same analysis as the trial court. *Preloznik v. City of Madison,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582 (Ct. App. 1983). It is a well-known methodology and need not be repeated here. *See, e.g., State Bank of La Crosse v. Elsen,* 128 Wis. 2d 508, 383 N.W.2d 916 (Ct. App. 1986). Suffice it to say that where there are no disputed facts, summary judgment is an appropriate means of deciding the legal issues and avoiding an unnecessary trial. *Smith v. State Farm Fire and Cas. Co.,* 127 Wis. 2d 298, 300, 380 N.W.2d 372, 373 (Ct. App. 1985).

Cornwell and the town argue that the contract violates the uniform taxation clause of the Wisconsin Constitution.[1] The issues raised by that contention center around two Wisconsin cases, *Ehrlich v. City of Racine* and *Monroe Water Works Co. v. City of Monroe,* 110 Wis. 11, 85 N.W. 685 (1901).

In *Monroe,* a water company entered into a contract with the city of Monroe in which it agreed to maintain fire hydrants and provide water to the city on a daily basis. The water was used to flush sewers and gutters and sprinkle streets, and to service schools, public buildings, and drinking fountains. In exchange, the city paid the real estate taxes for property owned by the water company. The supreme court held that the contract did not violate the uniform taxation clause stating that: "The rule is . . . well established that . . . a city and a company [may] agree that, as the price of services to be rendered, the city will pay a sum equal to the amount of municipal taxes to be levied . . .." *Id.,* 110 Wis. at 18, 85 N.W. at 687 (citations omitted).

---

[1] "The rule of taxation shall be uniform . . .." Wis. Const. art. VIII, sec. 1.

In *Ehrlich,* the city of Racine, desiring to obtain a storm sewer easement, entered into a contract with the owners of property outside the city limits whereby the owners would petition for annexation and grant an easement. In exchange, the city agreed to pay the owners sums equal to the difference between the amount of general property taxes computed upon actual valuation of their land and a lesser evaluation per acre.

This time, the supreme court, concluding that the agreement gave the property owner a preferential tax exemption, held that it violated the rule of uniform taxation.

> [W]e conclude that [the contract] provides for a partial exemption from taxes of the plaintiff's land. To be sure, [this] tax preference is accomplished by indirection; it requires the plaintiffs to pay the same assessment that the other landowners pay, but . . . the plaintiffs are subsequently entitled to what amounts to a rebate. We are unable to give absolution to a two-stage tax differential which would be a constitutional transgression if done in one stage. *Id.,* 26 Wis. 2d at 356, 132 N.W.2d at 491.

Distinguishing *Monroe,* the *Ehrlich* court stated:

> "By its own terms, the *Monroe Case* applied to a situation in which *services were to be rendered* and, thus, is distinguishable from the facts [here] . . .. [T]he land in question [here] was annexed to the city, and the city received an easement for a storm sewer. *Neither part of this consideration is comparable to the continuing services in Monroe. Ehrlich* at 357, 132 N.W.2d at 491 (emphasis added).

██

As in *Ehrlich,* we conclude that the contract between Stevens Point and IWL violates the uniform

taxation clause and is therefore void. IWL does not provide a continuing "service" to the city in exchange for the annual tax reimbursement. It merely agreed to petition the city for annexation, to refrain from developing the land during the lease term, and to allow the city to tap the aquifer underlying the land. This is quite different from the continuing active services provided by the water company in *Monroe.* As indicated, that company provided water and water supply-related services for a variety of city uses on a daily basis. The fact that the IWL agreement serves the interests of the city of Stevens Point does not turn IWL's agreement not to develop its land and to allow the city access to the groundwater into a new "service" each day throughout the ninety-nine-year life of the contract. IWL's promise is much more akin to the easement granted by the landowners in *Ehrlich,* the case in which the supreme court ruled the agreement invalid.

We agree that there is a public benefit involved here. Keeping the land undeveloped to protect the aquifer, and allowing the city to tap into it, plainly benefits city residents. However, it is not enough that the city, in its words, is getting a "good deal." The prohibition against preferential tax treatment is based on the compelling public policy of equal treatment for all property taxpayers. That policy was considered strong enough by the *Ehrlich* court to require declaring a similar agreement to be an illegal preferential tax break even though it, too, was undoubtedly a "good deal" for the city of Racine.

But *Monroe* tells us that for such a tax reimbursement or rebate scheme to pass constitutional muster under the uniformity clause, "it must appear that the sum so stipulated to be paid is a fair and just allowance for the actual services to be rendered . . .." *Id.,* 110 Wis.

141

at 18, 85 N.W. at 687. Thus, even if we were persuaded that IWL's agreement to do nothing with its land and to allow the city access to its underground aquifer were "services" within the meaning of the *Monroe* case, there is nothing in the record to suggest that the amount of the property tax reimbursements are in any way related to the value of the consideration received by the city.

We conclude, therefore, that even though a public benefit is plainly present, the outcome of this case is dictated by *Monroe* and *Ehrlich.* As decisions of the state's highest court, they are binding on us, and we must insure that the safeguards discussed in those cases are scrupulously followed.[2]

■

Cornwell and the town next argue that if the agreement is void, the annexation is void as well. We disagree. The rule in Wisconsin is that even though contracts that violate the constitution or state law or policy are void, the courts will not intervene in the relationships they have created. "A contract is illegal where its formation or performance is expressly forbidden by [the constitution]. Such a contract is void and the courts will leave the parties where they find them." *Hiltpold v. T-Shirts Plus, Inc.,* 98 Wis. 2d 711, 716-717, 298 N.W.2d 217, 220 (Ct. App. 1980); *Kryl v. Frank Holton & Co.,* 217 Wis. 628, 631, 259 N.W. 828, 829 (1935). This rule was followed in *Ehrlich* where, even though the court found the contract between the city and the annexed property owner to be unconstitutional and thus unenforceable, it refused to invalidate the annexation:

> It is our conclusion that the parties should be left where this court finds them. In other words, the con-

---

[2]Given our holding, we need not consider Cornwell's argument that the agreement violates the public purpose doctrine.

tract being unconstitutional, it cannot be enforced. However, since the parties must be considered equally responsible for entering into this agreement and performing under it *pro tanto,* neither side is entitled to judicial intervention with reference to activities which were previously consummated under the agreement. *Id.,* 26 Wis. 2d at 360, 132 N.W.2d at 493.

Being bound by *Ehrlich* and similar cases, we can do no differently here. Thus, while we declare the contract between IWL and the City of Stevens Point invalid and unenforceable, we do not invalidate the annexation.

We therefore reverse the judgment insofar as it declared the contract valid, but we affirm the trial court's refusal to void the annexation. We appreciate the difficult situation in which this leaves the parties. But, as the *Ehrlich* court concluded, illegal contracts "are void and the courts will not lend their assistance to the parties, but will leave them where they have placed themselves unlawfully." *Id.,* 26 Wis. 2d at 360, 132 N.W.2d at 493, quoting *Builders Supply Co. v. City of Helena,* 154 P.2d 270, 274 (Mont. 1944).

The judgment is reversed insofar as it declared the subject contract valid and affirmed insofar as it refused to vacate the annexation of the subject property to the city of Stevens Point.

*By the Court.*—Judgment affirmed in part and reversed in part. No costs to either party.