## No. 9007.

CITY OF NEW ORLEANS VS. THE NEW ORLEANS WATER-WORKS COMPANY.

The exemption from taxation of defendant's property by its charter, passed in 1877, is unconstitutional, and the city's demand for taxes is sustained.

To the extent that the exemption was the consideration of defendant's obligation to supply free water to the city, defendant is entitled to relief.

The exemption was not the sole, but only part of the consideration of the obligation to supply free water.

This partial failure of consideration entitles defendant to relief to the precise extent thereof, which is accomplished by condemning the city to pay for its water to the value of the taxes recovered.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

---

*Chas. F. Buck*, City Attorney, and *Wynne Rogers* for Plaintiff and Appellant.

*Albert Voorhies, Thos. J. Semmes, Henry B. Kelly, Blanc & Butler*, and *Breaux & Hall*, contra.

---

The opinion of the Court was delivered by

FENNER, J. The Act of the General Assembly, No. 33 of 1877, is the charter of the defendant company, and is entitled "An Act *to enable the City of New Orleans to promote the public health and to afford greater security against fire*, by the establishment of a corporation to be called the New Orleans Water-works Company," etc.

The act provides for the transfer from the city of New Orleans to the company of "the water-works and all the property appurtenant thereto," then belonging to said city.

It confers upon the defendant sundry valuable privileges, amongst others, "that it shall have for fifty years the exclusive privilege of supplying the city of New Orleans 'and its inhabitants with water from the Mississippi river, or any other stream or river, by means of pipes and conduits," etc., and to charge therefor.

The eleventh section of the act, which is directly responsive to the purposes declared in the title, provides:

"That the city of New Orleans shall be allowed to use water from the pipes and plugs of said company now laid, or hereafter to be laid, free of any charge, for the extinguishment of fires, cleansing of the streets, and for the use of all public buildings, public markets and charitable institutions, and that the said company shall place, free of any charge whatever, two hydrants of the most approved construction in front of each square, where a main pipe shall be laid at a suitable distance from each other, from which a sufficient quantity of water may be conveniently drawn for the extinguishment of fires, for watering the streets and cleansing the gutters, and for any other public purpose; that on the squares which do not front on the river, the hydrants shall be placed on opposite sides of the streets, at an equal distance from each other and the corners. It shall be the duty of the said company, whenever main pipes shall be laid, to supply water for all the purposes herein mentioned at all times during the continuance of this charter; *and in consideration thereof the franchises and property of said New Orleans Water-works Company, used in accordance with this act, shall be exempt from taxation—State, municipal and parochial.*"

By an amendment of the act, the exemption from State taxation was repealed.

The city of New Orleans brought the present suit to recover $11,-484 87, amount of taxes levied on the defendant's property for the year 1881.

Defendant, in its answer, pleads, in bar of plaintiff's action, the exemption granted by the foregoing act; and then, reconvening, demands that in case the plea of exemption should be overruled, the city should be condemned to pay the value of the water used during the year for which the tax was levied.

Judgment was rendered in favor of the city for the tax claimed and in favor of reconvenor against the city for the value of the water, viz:

the sum of forty thousand two hundred and eighty-one dollars and eighty-seven cents.

The correctness of the judgment for the tax does not admit of question.

The courts organized under the Constitution of 1868 repeatedly decided that neither municipal authorities nor the State Legislature could validly exempt property from taxation, either by commutation of such taxes, or in any other manner, unless the property was "actually used for church, school or charitable purposes." See, specially: City vs. Lafayette Insurance Co., 28 A. 756; Louisiana Cotton Manufacturing Co. vs. City, 31 A. 440; City vs. Louisiana Savings Bank, Id. 827; also: 27 A. 376, 646, 648; 28 A. 498, 512; 31 A. 292, 637, 519.

This jurisprudence has been followed by this Court, as at present organized. State vs. Louisiana Savings Bank, 32 A. 1137; City vs. New Orleans Sugar-shed Co., 35 A. 549.

To the extent that this subjection to taxation destroys or impairs the consideration upon which rests the contract of defendant to supply free water to the city, defendant is undoubtedly entitled to relief; but to that extent only.

The position of defendant, impliedly though not expressly approved by the judge a quo, is that the exemption from taxation was the sole consideration of the defendant's obligation to furnish the city with free water, and that when the city elected to claim its taxes it released the defendant from its entire obligation to furnish water free and became bound to pay for all the water used, even though exceeding, as it does, three-fold the taxes.

Such is not our view.

While the free water supply is declared by the act to be the consideration, and doubtless the sole consideration, of the exemption from taxes, the act does not declare, nor do we think it means, that the exemption is the sole consideration of the obligation to supply the water to the city. On the contrary, we consider that the latter is a principal and fundamental provision of the contract, the consideration of which is found not only in the exemption but in all the valuable privileges conferred by the act.

This is so clear to our minds from the reading of the entire act, and from the nature and purposes of the stipulation, as indicated by the title, that we deem it unnecessary to elaborate our reasons. The result is, that defendant has suffered, not a total, but only a partial failure of the consideration of its contract and is entitled to relief only pro tanto.

The principle governing the relief is well expressed by Mr. Parsons: "Where the consideration fails only in part, principles analogous to those which govern an inquiry into the adequacy of a consideration would be applied to it. If there were a substantial consideration left, although much diminished, it would still suffice to sustain the contract. * * * If the consideration and the agreement founded upon it, both consisted of several parts and a part of the consideration failed, and the appropriate part of the agreement could be apportioned to it, then they might be treated as several contracts, and a recovery of money paid be had accordingly." 1 Parsons Contracts, 462; Franklin vs. Miller, 4 A. & E. 605; Roberts vs. Havelock, 3 B. & Ad. 404.

There could not be a clearer case for the application of these principles than this.

Defendant's obligation to furnish water to the city is unrestricted as to amount, and it appears that the city has actually used and the defendant has furnished, water to the value of more than forty thousand dollars. The extent to which the consideration has failed is exactly the amount of the city's claim for taxes. If the city shall be condemned to pay defendant for that amount of water, exact justice will be done and defendant can claim no more.

But for the nature of the city's claim being for taxes, compensation would preserve the exact *status quo*.

We regret that the city's financial condition prevents the judgment against her from being the immediate equivalent, but the law regards interest as the only compensation for the delay which defendant may suffer in the collection of its judgment.

We observe that in the sugar-shed case we allowed the defendant a judgment in reconvention for an amount slightly exceeding the city's claim for taxes. It may be that, in that case, the exemption was the sole consideration of the *bonus;* but in any event, the difference between the two claims was so slight that the view now presented did not attract our attention. City vs. New Orleans Sugar-shed Co., 35 A. 549.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended by reducing the principal of the amount allowed defendant on its reconventional demand from $40,281 87 to $11,484 87; and that, as thus amended, the same be now affirmed, defendant to pay cost of this appeal.

ON APPLICATION FOR REHEARING.

MANNING, J. We permitted oral argument on this application chiefly because our decision was based upon a construction of the company's charter that had not been presented at the bar. The argument against it resolves itself into a single proposition, i. e. that the 11th section of the Act distinctly and in terms declares the water supply to be the consideration of the exemption from taxation, which declaration the Court can neither enlarge, restrict, nor otherwise alter, and the inevitable consequence is that the exemption having become inoperative, there can no longer be a free water supply of any quantity whatever.

Regarded from this standpoint it is manifest then that these two things—the exemption and the water supply—were considered exact equivalents, and it was the intention of the parties and the legislature that they should so be held. It might be that in the fluctuations of values the taxes should not always be the same, or that in the needs of the city or its profusion in using water the supply would vary, so that a year might come when the taxes will preponderate over the cost of the water supply as greatly as the latter does now over the former. Contingencies of this kind were foreseen, but the principle was stamped in the Act that however unequal arithmetically these two sums might be, they should be equal in the contemplation of the statute and that the one should be the exact equivalent of the other.

This is sufficient answer to the contention that the exemption is the *sole* consideration for the water supply, but a review of the statute in all its parts and of our construction of it impresses us with a settled conviction that the exemption was not the sole consideration but the privileges conferred as well.

The legislature was creating a company with large powers and valuable privileges, and extending the exercise of them through half a century. The city was transferring to this company all of her interests, pecuniary, sanitary, protective, etc. For such grants, and for exemption from the burden of taxation, a free supply of water for all the city's purposes might be considered a reasonable equivalent, but nothing less; and when a part of the one equivalent is withdrawn, equity requires that only a *pro rata* part of the other should no longer be free. This adjusts the debt each owes the other as nearly as we can adjust it. It would be perfect equity that the one should compensate the other, but the law interposes and declares a tax not compensable.

The rehearing is refused.

## DISSENTING OPINION.

POCHÉ, J.   A second examination of this case and a careful study of the position taken by counsel representing the defendant company, have led me to the conclusion that we had erred in a portion of our first opinion and in the decree rendered. Hence, I think that a rehearing should have been granted. There is, and there can be, but one opinion as to the nullity of the exemption of taxation and that, therefore, the tax claimed by the city must be enforced.

But the very reasoning which leads to that conclusion should, in my opinion, carry with it a declaration of the complete nullity of the contract, of which the tax exemption was one of the considerations, unless it can be made to appear that the act provides for or contemplates other and distinct considerations for the stipulated free supply of water to the city by the defendant company.

In my opinion, the reverse of that proposition clearly appears from a proper construction of the true meaning of section 11 of the Act (No. 33 of 1877) which is the only section or part of the act in which reference is made to the free supply of water to the city.

In that section, after providing that the city of New Orleans shall be allowed to use water,   *   *   free of charge, for the extinguishment of fires, cleansing of the streets and for the use of all public buildings, public markets and charitable institutions, the law maker used the following explicit and unambiguous language: "It shall be the duty of the said company, wheresoever main pipes shall be laid, to supply water, for all the purposes herein mentioned, at all times during the continuance of this charter; and in consideration thereof the franchises and property of said New Orleans Waterworks Company, used in accordance with this act, shall be exempt from taxation," etc.

It cannot be successfully denied that the "purposes herein mentioned" in the last part of the section refer to the free supply of water for the extinguishment of fires, cleansing of the streets, and for the use of all public buildings, public markets and charitable institutions.

There is no other language or provision in the act to which this reference could possibly apply. The language used fills out the continuation of a leading idea and the conclusion of a stipulation which is the main feature of the section. It could, therefore, refer to no other purposes already mentioned in the act or to be mentioned further on. That being the case, there is less doubt as to the subject matter to which the subsequent words "and in consideration thereof" refer to. It is more than plain, that they refer to the corresponding obligation

of the company to supply water free of charge for the purposes "herein mentioned." Hence, the section must have been intended to, and it does beyond a doubt, create a complete and independent contract between the city and the company. The contract, as thus shaped and created, has reference to no other portion of the act, which is complete as an act without the contract contained in the section—as complete as the contract itself stands without any reference to any or to all of the other provisions of the act.

Hence follows, in my opinion, the irresistible conclusion, that the consideration furnished by one of the contracting parties having utterly failed, the entire contract must fall.

I have carefully, but in vain, sought for any other consideration in the act which the city is made to contribute in compensation of the free water supply stipulated in its favor by the provisions of the eleventh section of the act.

There is no force in the suggestion that such a consideration is found in the valuable prerogatives and exclusive privileges conferred to the company. No language in the act justifies such a conclusion. On the contrary, language may be found which excludes even the implication that the act contemplated a free supply of water to the city for any other consideration than that stipulated in section 11. Thus we find that section 5 provides: "That the said waterworks company shall own and possess the privileges acquired by the city of New Orleans from the Commercial bank: that it shall have for fifty years * * * the exclusive privilege of supplying the city of New Orleans and its inhabitants with water," etc.

By this plain and unambiguous language the city is placed on exactly the same footing as "its inhabitants," and is to be regulated by the same laws of supply and demand. In the case of Waterworks vs. Sugar Refinery, we recently expounded the meaning of the privilege conferred by that section and we restricted the scope of its meaning to "selling water."

Besides, the obligation which rests on all large cities to supply their inhabitants with water, coupled with the fact that the city was anxious to be ridden of the burden which she had inherited from the Commercial bank, were serious and sufficient considerations for the charter to a corporation which furnished its own means for such a vast, useful and indispensable enterprise and paid the city the full value of the franchises transferred to it.

The grant of exclusive privileges was guarded and checked by the reserved power of controlling the company's charges and in limiting

the rate of its annual revenues, as shown by the provisions of section 15 of the act.

It is therein provided that the net profits of the company shall not exceed ten per cent per annum, and that in order to regulate this matter the city council, through a committee, shall have access to the books of the company; and that in case of a revenue in excess of the limitation, the city council shall have the power to reduce the rate of charges for water supply, so as to accomplish the end proposed; and it is also provided that the company shall not exact charges exceeding those now paid by the city, reserving to the latter the power of enforcing compliance by the writ of mandamus.   The whole tenor of the act distinctly conveys the conclusion that, with the exception of the provisions contained in section 11, the city has no greater privileges in the matter of water supply than all other consumers of water within her limits; and that *quoad* this company she occupies precisely the same position which she has always held towards the gas company or any other corporation created for the purpose and vested with the power of furnishing any commodity to " the city and its inhabitants."

For those reasons, I respectfully dissent from the conclusions of my associates of the majority.

Todd, J., concurs in this opinion.