# Wytheville

## PHILLIPS AND OTHERS *v.* CITY OF PORTSMOUTH.

### June 12, 1913.

1. TAXATION—*Corporations—Capital Stock.*—Whatever obscurity or confusion may exist elsewhere as to the meaning of the term "capital stock," its meaning is put beyond controversy in the case at bar, for it is expressly charged in the declaration that the whole of the capital stock of the company was invested in and represented by the property and works necessary for the supply of water, and a tax upon the capital stock, in the sense in which it is used in the declaration, was undoubtedly a tax upon the property in which it was invested.

2. CHOSES IN ACTION—*Open Accounts—Assignments—Action by Beneficial Owner.*—A debt due from another, though evidenced by an open account, is a chose in action, and the beneficial owner thereof may maintain an action therefor in his own name under the provisions of section 2860 of the Code.

3. TAXATION—*Exempting Property—Water Rents—Increased Rate—Municipal Corporations.*—An agreement by a city to pay to a water company a stipulated sum for water rent, and that if at any time a city tax for any purpose be imposed upon any of the property or works of the company necessary for the supply of water, the rental stipulated for shall be increased to an amount equal to said tax, is not an agreement to exempt said works and property of the water company from taxation, but is an arrangement for ascertaining the amount of water rent to be paid by the city, and is such a contract as the city may lawfully enter into.

4. TAXATION—*Penalty for Delay in Payment—Involuntary Payment.*—The payment of a tax in order to avoid a penalty imposed to accelerate the prompt payment of taxes is not such duress as to render the payment involuntary, and the payment cannot be recovered back.

Error to a judgment of the Circuit Court of the city of Portsmouth in an action of assumpsit. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The following is a copy of the plaintiff's declaration:

A. J. Phillips and T. J. Wool, plaintiffs, complain of the city of Portsmouth, defendant, of a plea of trespass on the case in assumpsit, for this, to-wit, that heretofore, to-wit: On the 13th day of September, 1887, the Portsmouth and Suffolk Water Company and the city of Portsmouth entered into a contract under seal, and to the court here shown, by which, for valuable consideration, the Portsmouth and Suffolk Water Company agreed to complete certain works for the supplying of the city of Portsmouth with water, and by which the said city of Portsmouth covenanted, amongst other things, that the Portsmouth and Suffolk Water Company, faithfully performing its part of said contract, it, the said city of Portsmouth, would pay to the said Portsmouth and Suffolk Water Company, for water supplied to certain hydrants described in said contract and for public purposes and uses set out in said contract, the sum of $7,500.00 *per annum,* or at the rate of $75.00 per hydrant, per year, payable every three months during the first ten years of said contract, and for each additional hydrant over and above 100 it, the said city of Portsmouth, would pay to the said Portsmouth and Suffolk Water Company, at the rate of $75.00 per hydrant *per annum,* during the first ten years of said contract, and that for the next ten years of the existence of said contract, it, the said city of Portsmouth, would pay to the said Portsmouth and Suffolk Water Company the sum of $50.00 per hydrant *per annum,* for each hydrant then set by the authority of the city of Portsmouth, or thereafter set or to be set by the authority of the city of Portsmouth, within the corporate limits of said city of Portsmouth, payable every three months, and the said plaintiffs say that said contract further provided that if at any time any city taxes, levies or assessments for any public purpose should be imposed on the property or works necessary for

the supply of water, as set out in said contract, the annual rental above set out should be increased to an amount equal to said city taxes, levies or assessments (paving assessments excepted) ; and the said plaintiff says that the Portsmouth and Suffolk Water Company furnished water to said hydrants for the use of said city during the years 1901, 1902, 1903 and 1904, in accordance with said contract, and faithfully performed its part of said contract; and that during the years 1901, 2, 3 and 4 city taxes for public purposes were imposed to the amount of $1,312.50 for each of said years on the capital stock of the Portsmouth and Suffolk Water Company, all of which capital stock was invested in and represented by the property and works necessary for the supply of water, amounting in the aggregate for said four years to $5,250.00, which said amounts were paid as follows: On October 31, 1901, $1,312.50; on October 31, 1902, $1,312.50; on October 31, 1903, $1,312.50, and on October 31, 1904, $1,312.50 by the said Portsmouth and Suffolk Water Company to the city of Portsmouth; whereby and by reason of said contract the city of Portsmouth became indebted to the Portsmouth and Suffolk Water Company during the year 1901 in the sum of $1,312.50; in the year 1902, in the sum of $1,312.50; in the year 1903, in the sum of $1,312.50, and in the year 1904, in the sum of $1,312.50, aggregating the sum of $5,-250.00, in addition to the annual rental for said hydrants; and the said plaintiffs say that while said city of Portsmouth paid the said Portsmouth and Suffolk Water Company the annual rental of $50.00 per hydrant as hereinabove set out, it wholly neglected and refused to pay said additional rentals of $1,312.50 for each of said years of 1901, 2, 3 and 4; and the said plaintiffs further say that in the year 1902 the said Portsmouth and Suffolk Water Company was, pursuant to an act of the General Assembly of Virginia, consolidated with the Berkley and South

Norfolk Water and Electric Light Company and the Nansemond Water Company, so as to form one company, by the name of the Portsmouth, Berkley and Suffolk Water Company, by means whereof the Portsmouth, Berkley and Suffolk Water Company became vested with all the property, property rights, franchises and privileges of said Portsmouth and Suffolk Water Company, and subject to all the responsibilities of said company; and that subsequently, to-wit, on or about the 17th day of April, 1911, the said Portsmouth, Berkley and Suffolk Water Company assigned unto the plaintiffs said claim against the defendant, together with interest thereon; by means whereof the said city of Portsmouth then and there became liable to pay to the said plaintiffs said sums aggregating the sum of $5,250.00, with interest on $1,312.50, a part thereof, from the 31st day of October, 1901, and on $1,312.50, another part thereof, from the 31st day of October, 1902, and $1,312.50, another part thereof, from the 31st day of October, 1903, and $1,312.50, the residue thereof, from the 31st day of October, 1904; and, being so liable, it, the said defendant, in consideration thereof, undertook and then faithfully promised to pay the said plaintiffs the said sum of $5,250.00, with interest as aforesaid, when it, the said defendant, should be thereunto afterwards requested.

Yet the said defendant, not regarding its said promises and undertakings, did not nor would it at the said time, when it was so requested and demanded, nor at any other time, before or afterwards, pay said plaintiffs the sums aforesaid, or any part thereof, but hath hitherto neglected and refused and still doth neglect and refuse, to the damage of the plaintiff $10,000.

And for this also, to-wit: That heretofore, to-wit, on the day and year aforesaid, the said city of Portsmouth entered into a contract in writing and sealed with its seal, and to the court here shown, with the Portsmouth and

Suffolk Water Company by which it, for valuable considerations, agreed that the said Portsmouth and Suffolk Water Company, faithfully performing its part of said contract, would pay to the Portsmouth and Suffolk Water Company, for water supplied to certain hydrants described in said contract, the sum of $7,500.00 *per annum,* at the rate of $75.00 per hydrant per year, payable every three months during the first ten years of said contract, and for each additional hydrant over and above 100, it, the said city of Portsmouth, would pay to the said Portsmouth and Suffolk Water Company, at the rate of $75.00 per hydrant *per annum,* during the first ten years of said contract, and that for the next ten years of the existence of said contract, it, the said city of Portsmouth, would pay to the said Portsmouth and Suffolk Water Company the sum of $50.00 per hydrant *per annum* for each hydrant then set by the authority of the city of Portsmouth, or thereafter set or to be set by the authority of the city of Portsmouth, within the corporate limits of said city, payable every three months; and the said plaintiffs say that said contract further provides that if at any time any city taxes, levies or assessments for any public purposes should be imposed on the property or works necessary for the supply of water, as set out in said contract, the annual rental above set out should be increased to an amount equal to said city taxes, levies or assessments (paving assessments excepted), and the said plaintiffs say that it furnished water to the said hydrants during the years 1901, 2, 3 and 4 in accordance with the said contract and faithfully performed its part of said contract, and that during the years 1901, 2, 3 and 4 city taxes for public purposes were imposed to the amount of $1,312.50 for each of said years on the capital stock of the Portsmouth and Suffolk Water Company, which capital stock was invested in and represented by the property and works necessary for the supply

of water, amounting in the aggregate for said years to $5,250.00, which said amounts were paid as follows: On October 31, 1901, $1,312.50; on October 31, 1902, $1,312.50; on October 31, 1903, $1,312.50, and on October 31, 1904, $1,312.50, by the said Portsmouth and Suffolk Water Company, to the said city of Portsmouth; and the said plaintiffs say that under the ordinance of the said city of Portsmouth, unless said taxes were paid on or before the 1st day of November of each year, that then a penalty of five *per cent.* of the amount of said tax will be imposed; and, to avoid said penalty, the said Portsmouth and Suffolk Water Company, on the 31st day of October, 1901, paid the amount of said tax, to-wit, the sum of $1,312.50, and on the 31st day of October, 1902, it paid the sum of $1,312.50, and on the 31st day of October, 1903, it paid the sum of $1,312.50, and on the 31st day of October, 1904, it paid the sum of $1,312.50; and the said plaintiffs say that said taxes assessed as aforesaid were illegal and were imposed without authority of law, and were paid as aforesaid to avoid said penalty of five *per cent.* under protest; and the said plaintiffs further say that in the year 1902 the said Portsmouth and Suffolk Water Company was, pursuant to an act of the General Assembly of Virginia, consolidated with the Berkley and South Norfolk Water and Electric Light Company and the Nansemond Water Company, so as to form one company by the name of the Portsmouth, Berkley and Suffolk Water Company, by means whereof the Portsmouth, Berkley and Suffolk Water Company became vested with all of the property, rights, franchises and privileges of said Portsmouth and Suffolk Water Company, and subject to all responsibilities of said company, and that subsequently, to-wit, on or about the 17th day of April, 1911, the said Portsmouth, Berkley and Suffolk Water Company assigned to plaintiffs said claim against the said defendant, together with interest thereon, by means whereof the said city of Portsmouth then and there became indebted and

liable to the plaintiffs in the said sum of $5,250.00, with interest on $1,312.50, a part thereof, from the 31st day of October, 1901, on $1,312.50, another part thereof, from the 31st day of October, 1902; on $1,312.50, another part thereof, from the 31st day of October, 1903, and on $1,312.50, another part thereof, from the 31st day of October, 1904; and being so liable and indebted, it, the said defendant, in consideration thereof, undertook and then faithfully promised to pay to the said plaintiff the sum of $5,250.00, with interest as aforesaid, when it, the said defendant, should be thereunto afterwards requested.

Yet the said defendant, not regarding its said promises and undertakings, did not, nor would it at any time it was so requested and demanded, nor at any time before or afterwards, pay said plaintiffs the sums aforesaid, or any part thereof, but hath hitherto wholly neglected and refused, and still doth neglect and refuse, to the damage of the plaintiffs, $10,000.00.

DEMURRER OF DEFENDANT AND THE GROUNDS THEREOF.

The said defendant says that the declaration in this action, and each and every count thereof, is not sufficient in law, and states the grounds of demurrer relied on to be as follows:

First: That the tax imposed by the city of Portsmouth on the capital stock of the Portsmouth and Suffolk Water Company for the years 1901, 1902, 1903 and 1904 was not a tax, levy or assessment imposed upon any property or works of the Portsmouth and Suffolk Water Company, or its successors, necessary for the supply of water, as contemplated by the provisions of the contract between the city of Portsmouth and the Portsmouth and Suffolk Water Company, as set out in the plaintiff's declaration, and hence there was no obligation on the defendant to pay the

Portsmouth and Suffolk Water Company, or its successors, or the plaintiffs, the sums demanded in the declaration as increased hydrant rental.

Second: That the plaintiffs, not being parties to the contract between the defendant and the Portsmouth and Suffolk Water Company, mentioned in the declaration, and not being the assignees of said contract or of any part thereof, but the assignees of, if anything, only of a mere chose in action, to-wit: the additional rental alleged to be due by the defendant to the Portsmouth and Suffolk Water Company for the years 1901, 1902, 1903 and 1904, cannot maintain this action in their own names for the violation of any rights growing out of said contract.

Third: That the provision of the contract between the city of Portsmouth and the Portsmouth and Suffolk Water Company, mentioned in the declaration, that if at any time any city tax, levy or assessment for any public purpose shall be imposed upon any of the property or works of the company necessary for the supply of water, the rental agreed in said contract shall be increased to an amount equal to said city tax, assessment or levy, is in effect an exemption of the property or works of the said company necessary for the supply of water from city taxation, and did not pass to the Portsmouth, Suffolk and Berkley Water Company under the act of merger or consolidation of 1902.

Fourth: That the declaration does not allege facts sufficient to show that the payments of the taxes complained of were involuntary, or were made under such circumstances as would entitle the Portsmouth and Suffolk Water Company, or its successors, or the plaintiffs, to recover the same.

Fifth: That the plaintiffs not being the persons in whose name the taxes for the years 1901, 1902, 1903 and 1904, mentioned in the declaration, were assessed, or the persons who paid the same, they cannot maintain an action in their own names to recover them back.

Sixth: And for other good and sufficient grounds.

*R. Randolph Hicks,* for the plaintiffs in error.

*J. W. Happer* and *Frank L. Crocker,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The first ground of demurrer to the declaration in this case is: "That the tax imposed by the city of Portsmouth on the capital stock of the Portsmouth and Suffolk Water Company for the years 1901, 1902, 1903 and 1904 was not a tax, levy or assessment imposed upon any property or works of the Portsmouth and Suffolk Water Company, or its successors, necessary for the supply of water, as contemplated by the provisions of the contract between the city of Portsmouth and the Portsmouth and Suffolk Water Company, as set out in the plaintiff's declaration. . . ."

One of the provisions of the contract set out in the declaration is that "if at any time any city taxes, levies or assessments for any public purpose should be imposed on the property or works necessary for the supply of water, as set out in said contract, the annual rental above set out should be increased to an amount equal to said city taxes, levies or assessments. . . ." Had the declaration stopped there, there would have been much force in the contention of the defendant, but it goes on to state that during the years 1901, 1902, 1903 and 1904 city taxes for public purposes were imposed to the amount of $1,312.50 for each of said years on the capital stock of the Portsmouth and Suffolk Water Company, all of which capital stock was invested in and represented by the property and works necessary for the supply of water, amounting in the aggregate for said four years to $5,250.00, which

said amounts were paid. It would seem clear, therefore, that if the capital stock was invested in and represented by the property and works necessary for the supply of water, and the tax was levied upon the capital stock, that it was of necessity a tax upon the property and works necessary for the supply of water as set out in the contract.

In *Farrington* v. *State of Tennessee,* 95 U. S. 686, 24 L. Ed. 558, it is said: "The capital stock and shares of the capital stock are distinct things. The capital stock is money paid or authorized, or required to be paid as a basis of the business of the bank and the means of conducting its operations. It represents whatever it may be invested in."

And in *State Bank of Va.* v. *Richmond,* 79 Va. 115, it is said: "The capital stock and the shares of the capital stock are distinct things. The capital stock and shares may both be taxable and it is not double taxation."

As is said in the brief for the defendant in error, there is some confusion among the authorities in their definition of capital stock, the term sometimes being applied to the shares of stock in the hands of stockholders.

In Cook on Stock and Stockholders (2nd ed.), section 3, it is said: "Strictly the capital stock of a corporation is the money contributed by the corporators to the capital, and is usually represented by shares issued to subscribers to the stock on the initiation of the corporate enterprise."

And in 10 Cyc., at page 364: "The term 'capital stock' in an act of incorporation is said to mean the amount contributed or advanced by the shareholders as members of the company, and does not refer to the tangible property of the corporation."

But whatever obscurity or confusion may elsewhere exist as to the precise meaning and force of the term "capital stock," the averments of the declaration before us, ad-

mitted to be true by the demurrer, put the matter beyond the range of controversy, for it is expressly charged that the whole of the capital stock was invested in and represented by the property and works necessary for the supply of water, and a tax upon the capital stock, in the sense in which it is used in the declaration, was undoubtedly a tax upon the property in which it was invested.

The first ground of demurrer is, therefore, overruled.

The second ground of demurrer is: "That the plaintiffs, not being parties to the contract between the defendant and Portsmouth and Suffolk Water Company, mentioned in the declaration, and not being the assignees of said contract, or any part thereof, but the assignees of, if anything, only a mere chose in action, to-wit, the additional rental alleged to be due by the defendant to the Portsmouth and Suffolk Water Company for the years 1901, 1902, 1903 and 1904, cannot maintain this action in their own names for the violation of any rights growing out of said contract."

It is not claimed in the declaration that the contract between the Portsmouth and Suffolk Water Company and the city of Portsmouth was ever assigned to the plaintiffs. The contention is that the plaintiffs are the assignees of a debt due to the Water Company, and that claim is a chose in action within the terms of section 2860 of the Code. In reference to this section, Barton, in the first volume of his Practice (end ed.), p. 236, says that "it now includes also open accounts in the use of the words 'or other chose in action,' upon which now suit may be brought in the name of the assignee, although formerly it could be only for his benefit. The language of the statute covers the right of the assignee or beneficial owner to assert in his own name the right to recover on any chose in action, whereas the former statute left every other instance except those specified in the language of the act to the rules as they were at common law."

The third ground of demurrer is: "That the provision of the contract between the city of Portsmouth and the Portsmouth and Suffolk Water Company, mentioned in the declaration, that if at any time any city tax, levy or assessment for any public purpose shall be imposed upon any of the property or works of the company necessary for the supply of water, the rental agreed in said contract shall be increased to an amount equal to said city tax, assessment or levy, is in effect an exemption of the property or works of the said company necessary for the supply of water from city taxation, and did not pass to the Portsmouth, Suffolk and Berkley Water Company under the act of merger or consolidation of 1902."

If the premises were sound, the conclusion would follow; but is the contract stated in the declaration an exemption of the property and works of the company from taxation?

In *Grant* v. *City of Davenport,* 36 Ia. 396, the ordinance construed was assailed as violative of article 8, section 2, of the Constitution, which declares that the property of corporations shall be liable to taxation the same as the property of individuals. "If," said the court, "we placed the same construction upon the ordinance as the counsel for appellants seems to, we should probably concur with him in his legal positions and conclusions thereon. But it seems to us that when the whole ordinance is construed together, it does not amount to an exemption from taxation. It, in effect, applies the taxes, as they would otherwise become due, in part payment of, or in part consideration for, the water rent. The city pays the amount of money specified and the taxes upon the franchise and the property required for the management of the works as water rent. It might have required the payment of the taxes, and then returned the amount as part pay for water rent. The manner of doing it cannot defeat the power to do it."

In *Monroe Water Works* v. *City of Monroe,* 110 Wis. 11, 85 N. W. 685, it is said : "An agreement for immunity from taxation will not be recognized, unless couched in terms too plain to be mistaken. Where, however, the agreement is express, and the intention evident, to exempt property and release it from tax burdens, it is void and will not be enforced. . . . The rule is equally well established that it is competent for a city and a company to agree that, as the price of services to be rendered, the city will pay a sum equal to the amount of municipal taxes to be levied."

In *Ludington Water Supply Co.* v. *City of Ludington,* 119 Mich. 488, 79 N. W. 561, it was contended that the provisions of the contract under consideration relating to taxes were invalid for the reason that the city had no power, under its charter, to exempt property from taxation, and that this contract was an attempt to exempt the property of the plaintiff in excess of a certain amount from its share of the public burden. The opinion says : "The contract does not purport to provide that the property of the plaintiff shall not be assessed. Its terms indicate that it was intended by both parties that it would be assessed, and that the plaintiff would pay the taxes on the property up to a certain amount, and the defendant all in excess, as a part of the consideration for the supply of water. The city no more exempts the property of the plaintiff from taxation by such an agreement than does the mortgager who agrees to pay the taxes levied against the mortgaged property exempt the mortgaged property from taxation. Possibly neither possesses the power to exempt property from taxation. Certainly neither has done it."

In *Cartersville, &c., Co.* v. *Mayor, &c., of Cartersville,* 89 Ga. 683, 16 S. E. 25, it was held, that "while a city cannot exempt a gas company from municipal taxation, it can contract to pay for gas a stipulated sum per lamp, and in

addition thereto a sum for all the lamps supplied equivalent to the amount of taxes imposed upon the company, provided this additional sum is a fair and just allowance to compensate for the actual value of the light service, and the stipulation is *bona fide* and not in the nature of an evasion of the law prohibiting exemption from taxes. The present action is not brought to recover money voluntarily paid as taxes, but for a balance due under the contract for lighting the city, this balance being measured in part by the amount of taxes assessed and collected by the municipal government from the gas company." See also *Los Angeles* v. *Los Angeles City Water Works,* 49 Cal. 638.

We are of opinion that the third ground of demurrer is insufficient.

The fourth ground of demurrer is: "That the declaration does not allege facts sufficient to show that the payments of the taxes complained of were involuntary or were made under such circumstances as would entitle the Portsmouth and Suffolk Water Company, or its successors, or the plaintiffs, to recover the same."

This ground applies to the second count in the declaration and raises the question frequently presented as to whether or not a payment of taxes was voluntary or involuntary within the meaning of the law. If voluntary, they cannot be recovered back; if involuntary, the recovery may often be had.

It is contended by the plaintiffs in error that the payments here were involuntary, because the ordinance under which the tax was levied imposed a penalty of five *per cent.* if the tax was not paid when due. The claim of plaintiffs in error is that the imposition of a penalty is a species of duress, and that where the tax is paid to avoid this additional burden, it is altogether different from the payment of a tax and the claim that it was involuntary merely because the tax was illegal.

13

The subject of the recovery back of illegal taxes paid under protest was fully considered by this court in the case of *Phoebus* v. *Manhattan Club,* 105 Va. 144, 52 S. E. 839, 8 Am. Cas. 667, and we shall content ourselves upon this point with referring to the opinion of Judge Buchanan in that case and the authorities there cited. We do not think that the imposition of a penalty differentiates the two cases—that they are in principle identical—and that the case cited controls that under consideration. To hold that the imposition of a penalty, which is designed to accelerate the prompt payment of taxes, constitutes a duress would be to render the payment of the great bulk of our taxes involuntary and subject to be recovered back, and subject the collection of taxes to all the inconveniences and ills pointed out by Judges Carr and Tucker in *Mayor of Richmond* v. *Judah,* 5 Leigh (32 Va.) 305.

What we have said sufficiently disposes of the fifth ground of demurrer; and upon the whole case we are of opinion that the court erred in sustaining the demurrer to the first count in the declaration, but properly sustained the demurrer to the second count ,and for the error in its ruling with respect to the first count its judgment must be reversed.

*Reversed.*