#### Staunton.

## CITY OF RICHMOND V. VIRGINIA RAILWAY AND POWER COMPANY.

### March 13, 1919.

1. TAXATION—*Exemptions—Constitutional Provision.*—Under the Constitutions of 1851 and 1870, because of the absence of such express provisions as those in the Constitution of 1902, section 168, which provides that all property, except as hereinafter provided shall be taxed, and section 183, which provides that except as otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, a difference of opinion existed as to the question of whether it was in the power of the legislature to exempt, or to authorize a municipality to exempt, other property from taxation than that mentioned in the tax exemption clauses of such former Constitutions, and that point was left undecided, and although urged in argument in the instant case, the Supreme Court of Appeals did not find it necessary to determine the question.

2. TAXATION—*Exemptions—Construction of Statutes — Power of Municipality to Exempt.*—Statutory provisions relied on to have the effect of relinquishing the taxing power or of authorizing a municipality to do so, will be strictly construed against the claim of relinquishment, even when the legislative right to so act in the premises unquestionably exists. The intention of the legislature to make or to authorize the making of such a relinquishment will certainly not be inferred or presumed from the language of a statute which is plainly capable of another construction. The same principle applies in the construction of a statute relied on to confer the power of tax exemption upon a municipality. A charter provision, or other statute, will not be construed to confer upon a municipality the authority to make a tax exemption unless such authority is *expressly* given.

3. TAXATION — *Exemptions — Construction of Statutes — Power of Municipality to Exempt—"Terms."*—Acts of Assembly, 1874-5, p. 264, provided that it should be "lawful for the common council of the city of Manchester * * * to make sale of the

67

commons, including the water power * * of said city, by such mode and upon terms as said common council shall deem proper."

*Held:* That this did not authorize the city to exempt the land, the subject of the sale, from taxation. Although the word "terms" might, in its broadest sense, authorize an exemption from taxation, the language is equally susceptible of the construction that the terms referred to are merely the terms of payment of the purchase money, including the manner of securing any deferred payments, etc., as it is of the construction that a tax exemption was thereby intended to be authorized. Similar language is frequently used in deeds, wills and other writings creating powers of sale and the former is the usual and ordinary meaning of the word "terms" when used in connection with provisions conferring a power of sale.

4. Taxation—*Municipal Corporations—Invalid Exemption of Property—Equitable Set-Off—Valuable Consideration of Tax Exemption.*—Where a continuing service is to be rendered to a municipality for which it has the power to contract, and it does make a contract for such service which is reasonable and valid in other respects, and therein, either expressly, or substantially, agrees to pay each year for such service the amount of the city taxes on certain property, and the amount so agreed upon appears to be only a fair return, or but a reasonably adequate consideration for the service rendered, the courts will hold such an agreement not to be, in truth, a tax exemption, but an agreement to make compensation for such service, and, hence, such an agreement is enforceable either by action to recover for the service rendered at the contract price therefor, which in the annual tax, or by set-off of the value of such service against the annual tax as it accrues, so long as such service continues under such contract.

5. Taxation—*Municipal Corporations—Invalid Exemption of Property—Equitable Set-Off—Valuable Consideration of Tax Exemption.*—But the doctrine of the preceding syllabus has not been extended to the point of holding that a municipality may, for any other valuable consideration than services to it, contract away its taxing power and that such contract will be held not to be a tax exemption. Such a broad power of contract would annul all constitutional provisions against exemption of property from taxation. It is not a question of the presence or absence of a valuable consideration to support tax exemptions against which such constitutional provisions are directed.

6. Taxation—*Municipal Corporations—Invalid Exemption of Property—Equitable Set-Off—Valuable Consideration of Tax Ex-*

*emption—Case At Bar.*—In the case at bar, the tax exemption claimed was not an exemption for a reasonable time upon property reasonably certain as to identity and value. The exemption sought was "forever;" it extended not only to certain property which existed at the time when the exemption was conferred, but to all which may have been placed thereon since, and also, to all "other property which may hereafter be added thereto, including capital added thereto or used or employed thereon." Such an exemption was not within the power of the city of Manchester to create under the Acts of Assembly 1874-5, p. 264.

Appeal from a decree of the Chancery Court of city of Richmond. Decree for defendant. Plaintiff appeals.

*Reversed.*

This is a suit in equity by the city of Richmond having for its object the enforcement of the lien of certain city taxes assessed in the year 1913 for that year, and also for the preceding years, 1909, 1910, 1911 and 1912, on certain real estate belonging to the Virginia Railway and Power Company, located in the territory which was embraced in the city of Manchester prior to the annexation of the latter with the city of Richmond, which occurred in 1910. The bill prays for a renting or sale of said real estate, or a part thereof, to enforce the payment of said taxes and interest thereon and for general relief.

The real estate aforesaid consists of approximately twenty-nine acres, including the Manchester canal and certain appurtenant water rights.

The Railway and Power C ompany acquired this real estate, along with a large amount of other property, by deed of date June 29, 1909, from certain special commissioners of court in execution of a decree of sale thereof, along with such other property, under which decree such company became its purchaser. The total consideration for such purchase and conveyance was $8,100,000. It does not appear in evidence what part thereof was the consideration

paid by the Railway and Power Company for the said real estate. Such real estate was assessed by the State Corporation Commission at a valuation of $200,750.00 for State taxation for the years 1909 to 1913, inclusive, and it was on such valuation that the city taxes aforesaid were assessed; and there is a stipulation of counsel in the record which provides, in substance, that such valuation should be adopted by the commissioner in chancery in stating an account of the fee simple value of said real estate under the requirements of a decree in the cause before us made in pursuance of the statute in such case made and provided.

The Railway and Power Company's title to said real estate traces back of its said deed of 1909 to a sale and conveyance thereof by the city of Manchester in 1881 to the Richmond and Alleghany Railroad Company, a predecessor in title of the Railway and Power Company.

It was covenanted in a written contract evidencing the last named sale, and in the last named conveyance, as follows:

"That a part of the consideration for the purchase by the party of the second part of said property is that the city of Manchester is to and does hereby exempt said property forever from taxation by its authorities, either direct or indirect, general or special, and also all improvements or other property now thereon or which may hereafter be added thereto."

Two hundred thousand dollars was the amount of the money consideration paid to the city of Manchester by its said vendee and its successors in title (the Virginia Railway and Power Company itself having paid a part thereof evidenced by certain bonds of the city of Manchester assumed by such vendee, but what part does not appear in evidence), in accordance with the terms of the last named sale and conveyance; of which, in accordance with the evidence in the cause, only about $100,000.00 was paid for the real estate and the remaining $100,000.00 was paid as the consideration for three

other things, viz.: (1) for said city tax exemption, (2) for the dismissal of a certain suit then pending of the city of Manchester against the Richmond and Danville Railroad Company for damages for alleged injuries done by it and others to certain water rights of the city and the release of all such claims of damages, and (3) for certain rights, so far as the city of Manchester could give them, of laying certain railway tracks in certain localities in such city and of contracting with another railroad company for the use of certain of its tracks in such city or for building tracks alongside or near to such tracks and connecting therewith, etc. But what portion of such $100,000.00 was for the said tax exemption, and what for the other subjects (1) and (2) aforesaid, does not appear in evidence. There is evidence in the cause, however, tending to show that such tax exemption "was a most vital part of the consideration, was thoroughly discussed by the attorneys for the railroad company and the city attorneys for the city of Manchester * * * was considered by them to be proper and legal and necessary," and that perhaps the purchase would not have been made but for the tax exemption covenant aforesaid.

At the time of said 1881 sale, the reservoir of the city of Manchester was supplied with water from the said Manchester canal by pumps furnished and operated by the city. The contract of sale of 1881 aforesaid contained an agreement that the city of Manchester might "continue to have the use of the water from said canal to the same extent it now has," but it was therein provided that in no event should this water be drawn off in excess of "a total of eighty feet (cubic) per second during twenty-four hours, this amount to include the supply to the reservoirs and the power necessary to pump the same;" and there was the additional provision that the city should have "the right of ingress, egress and regress to and from said pumps so long as they are so used as aforesaid." The deed aforesaid of 1881 conformed to such agreement on the subject of such water supply.

Such use of such water ceased following the annexation of the city of Manchester to the city of Richmond and before this suit was instituted.

There were a number of leases of certain of said water rights, from the city of Manchester to various manufacturing and other companies and persons, existing at the time of said 1881 sale and conveyance, which were for terms of years expiring at different times, but which it seems from the evidence in the cause (the leases themselves not being in evidence) were renewable at the option of the leaseholders provided the terms thereof were complied with, which made such leases possible perpetual leases. By the contract and deed of 1881 aforesaid, the vendee and grantee thereunder took said real estate subject to such leases and covenanted "to carry out * * * the covenants" with the lessees in all of such agreements. It is shown in evidence, however, that the rental return to such vendee from such leases was some $5,000.00 per year in excess of all expense to it of carrying out such covenants, so that this undertaking was a benefit and not a burden, and has so continued in the hands of subsequent owners of said real estate down to the Railway and Power Company, which received its conveyance of said real estate with notice of said leases and now holds such real estate subject to such of said leases as have not been forfeited under the provisions thereof.

The said real estate was acquired by the city (then the town) of Manchester, in 1769, when Col. William Byrd, the founder thereof, as well as of the city of Richmond, laid off the town of Manchester in blocks and streets. The real estate involved in this suit was set apart as a "common forever." See *Mayo* v. *Murchie*, 3 Munford (17 Va.) 358, decided in 1811, for a history of the subject. The town of Manchester was chartered by act of the legislature in 1869; and under subsequent acts of Assembly authorizing it so to do the leases aforesaid were made. In 1874 the

town became the city of Manchester by act of Assembly approved March 20th of that year.

It is in evidence that the city of Manchester was in the year 1875 seriously financially embarrassed and so continued or grew worse, until the sale aforesaid was made in 1881, having difficulty in paying the outstanding interest on its bonded indebtedness; but that such sale wholly relieved it from such embarrassment and that the sale was made for that purpose on the part of the city of Manchester.

The legislative authority under which the city of Manchester inserted said city tax exemption covenant in said 1881 contract of sale and deed is contained in Acts of Assembly 1874-5, p. 264, and, so far as material, is as follows:

"* * * it shall be lawful for the common council of the city of Manchester * * * to make sale of the commons, including the water power * * * of said city, by such mode and upon such terms as said common council shall deem proper."

It is a *concessum* in the cause that the common council of the city of Manchester made the sale and conveyance aforesaid and included therein the city tax exemption covenant aforesaid.

It is in evidence that the city of Manchester, after 1881 and until its separate corporate existence was extinguished by the annexation aforesaid, assessed no city taxes against said real estate or lease-holds or other water rights appurtenant to such real estate. Prior to 1881, as such property belonged to such city, it, of course, assessed no city taxes against it and derived no revenue by taxation from it.

The decree under review dismissed the bill of the city of Richmond, holding, as per the memorandum opinion of the court made a part of the decree, in substance, that the tax exemption covenant aforesaid is valid, that it ran with the land, and that the Railway and Power Company holds said real estate exempt from municipal taxation.

*H. R. Pollard* and *George Wayne Anderson,* for the appellant.

*A. B. Guigon, T. J. Moore* and *E. R. Williams,* for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

We will consider and pass upon the questions raised by the assignments of error and the positions of the appellant, the city of Richmond, and the Railway and Power Company, the appellee, in their order as stated below.

1. Is the municipal tax exemption above set forth valid?

If such question depended for its decision upon the enquiry as to the constitutionality of an act of the legislature authorizing such exemption, it would arise under sections 1 and 3, of Article X of the Constitution of 1870. The language of those sections of that Constitution are different from the provisions on the same subject in sections 168 and 183 of our present Constitution of 1902. The former Constitution differed from the latter in this, it did not unquestionably contain an express provision that all property should be taxed except such as it mentioned as subject to exemption by the legislature; and, with respect to the clause allowing the legislature to exempt certain property mentioned, it did not contain an express statement that no other property should be exempt. The Constitution of 1902 supplies the defects mentioned in both particulars by providing in section 168 that, *"All property,* except as hereinafter provided, *shall be taxed;* * * *;"* and, in section 183, that—"Except as otherwise provided in this Constitution, the following property and *no other* shall be exempt from taxation; * * *." (Italics supplied).

[1] Because of the absence in the Constitution of 1870, (and in the preceding Constitution of 1851), of such express provisions as those in the Constitution of 1902 above

italicized, a difference of opinion existed among the eminent and learned judges of this court, in the cases which arose prior to the Constitution of 1902, involving the question of whether it was in the power of the legislature to exempt, or to authorize a municipality to exempt, other property from taxation than that mentioned in the tax exemption clauses of such former Constitutions and that point was left undecided. See *Whiting* v. *Town of West Point*, 88 Va. 905, at pp. 911-913, 14 S. E. 698, 15 L. R. A. 860, 29 Am. St. Rep. 750, and cases cited. And we may also leave such point undecided, although it is urged upon us in argument.

In the view we take of the statute of 1875 (Acts 1874-5, p. 264), relied on by the Railway and Power Company as furnishing legislative authority to the city of Manchester to make the tax exemption in question, the legislature in this instance has not undertaken to authorize such exemption.

[2] Statutory provisions relied on to have the effect of relinquishing the taxing power or of authorizing a municipality to do so, will be strictly construed against the claim of relinquishment, even when the legislative right to so act in the premises unquestionably exists. The intention of the legislature to make or to authorize the making of such a relinquishment will certainly not be inferred or presumed from the language of a statute which is plainly capable of another construction.

As said by Chief Justice Marshall, in the case of *Bank* v. *Billings*, 4 Pet. 514, at page 561 (7 L. Ed. 939), in speaking of the taxing power: "It would seem that the relinquishment of such a power is never to be presumed."

As said on the same subject by Mr. Justice Field, in *Minor* v. *Phil. etc., R. Co.*, 18 Wall. 206, 21 L. Ed., at p. 894; "* * * before any exemption * * * can be admitted the intent of the legislature to confer the immunity * * * must be clear beyond a reasonable doubt."

As said in 4 Dillon on Mun. Corp. (5th ed.), section 1401:

68

"As the burden of taxation ought to fall equally upon all, statutes exempting persons or property are construed with strictness and the exemption should be denied to exist unless it is so clearly granted as to be free from fair doubt. Such statutes will be construed more strongly against those claiming the exemption." Citing numerous authorities.

The same principle applies in the construction of a statute relied on to confer the power of tax exemption upon a municipality. Accordingly it is well settled that a charter provision (which is, of course, a statute) or other statute, will not be construed to confer upon a municipality the authority to make a tax exemption, unless such authority is *expressly* given. *Whiting* v. *Town of West Point, supra,* (88 Va. 905, at pp. 906-910, 14 S. E. 698, 699 [15 L. R. A. 860, 29 Am. St. Rep. 750] and authorities cited; 1 Cooley on Taxation [3rd ed.] p. 344).

As said by the last cited authority:

"Pertaining, as it does, to the sovereign power to tax, the municipalities of a State have not the exempting power, except as they are expressly authorized by the State." Citing numerous authorities.

[3] The language in the statute of 1875 (quoted in the statement preceding this opinion), on which the Railway and Power Company must rely to confer the power in question, merely confers the power of sale of the property upon the common council of the city "upon such terms as said common council shall deem proper." The word "terms" may have a broad meaning, it is true, and might be given the meaning contended for by the appellee in the case before us. But, to say the least, such language is equally susceptible of the construction that the terms referred to are merely the terms of payment of the purchase money, including the manner of securing any deferred payments, etc., as it is of the construction that a tax exemption was thereby intended to be authorized. Similar language is frequently used in deeds, wills and other writings creating pow-

ers of sale and the former is the usual and ordinary meaning of the word "terms" when used in connection with provisions conferring a power of sale.  8 Words & Phrases (1st ed.), p. 6922: *Idem.* (2nd ed.), pp. 884-5.  And such, as we think, is the meaning with which the language we are dealing with was used in the statute under consideration.

The above question must therefore be answered in the negative.

We come now to the consideration of another subject:

2. Although invalid, the tax exemption covenant aforesaid unquestionably constituted a very material part of the consideration to the Richmond and Danville Railroad Company to make the purchase of the real estate and to pay the consideration therefor aforesaid.  This was perhaps also true, although probably in a lesser degree, of the purchases by its successors in title down to and including the appellant, the Virginia Railway and Power Company; but such facts are not shown in evidence.  It is assumed by the last named company, without any sufficient evidence thereof in the record, as we think, that said tax exemption covenant entered into the consideration for its purchase of said real estate to an amount in excess of the city taxes which have accrued thereon for 1909 to 1913 inclusive, and which may accrue in future, and appellee contends that, if such taxes are held to be assessable and enforceable, there has been a failure of consideration to appellee to that extent; and that, (as is said in the brief for appellee) "without going into a careful analysis of the doctrines of set-off, or recoupment, or counter claim, or the statutes pertaining thereto, it is plain that in this court of equity, if the covenant be held to be invalid, the defendant company" (the appellee) "is entitled to receive due credit and compensation for this large investment which has enured to the benefit of the city, without any return to the company" and that, hence, the appellee is entitled "to an equitable offset against the city for an amount at least equal to the taxes claimed."  (The quotations just

made from the brief of counsel for appellee, are not in the order in which the language quoted is used, but are believed to fairly convey the meaning intended.)

Neither the issues made by the pleadings nor the evidence in the cause are, or is, sufficient to enable us to enter upon the decision of the questions which are here presented, even if the court below had jurisdiction of the subject in this cause—as to which we express no opinion. At any rate such questions were not in issue in the court below so far as appears in the record and they were not passed upon by such court so far as appears from the decree under review and the memorandum opinion made a part of the decree, nor have they been argued before us, except the narrow question of whether the principle of the case of *Phillips* v. *City of Portsmouth,* 115 Va. 180, 78 S. E. 651, and kindred cases referred to below, is applicable to the said claim of an equitable set-off; so that we wishe to be understood as expressing no opinion on such questions, except upon the narrow question last referred to. The last mentioned question having been fully argued before us we feel that we should pass upon it and will accordingly now do so.

The question last mentioned may be stated as follows:

3. Is the appellee, the Virginia Railway and Power Company, under the doctrine of the cases last above referred to, entitled to the set-off claimed by it as aforesaid against the annual city taxes which have been assessed against said real estate and appurtenant water rights owned by it, as aforesaid, and which may in all future time ("forever," per said tax exemption covenant) be so assessed, whether "direct or indirect, general or special, * *," not only on the land and other property conveyed by the 1881 deed aforesaid, and "also (on) all buildings and improvements and other property thereon"; but likewise on all such property and on all "other property which" (since 1881 may have been added and which) "may hereafter be added thereto, including capital added thereto or used or employed thereon"?

The cases relied on by the Virginia Railway and Power Company to support an affirmative decision of the question just stated, or which are cited in the brief for such company on the point urged, viz: that tax exemptions are valid which are supported by a valuable consideration, are the following: *City of New Orleans* v. *New Orleans Water Works Co.* (1884), 36 La. Ann. 432; *Conery* v. *New Orleans Water Works Company*, 41 La. 910, 7 South. 8; S. C., 142 U. S. 79, 12 Sup. Ct. 142, 35 L. Ed. 943; *City of Frankfort* v. *Capital etc., Co.* (Ky. 1895), 29 S. W. 855; *Bartholomew* v. *City of Austin, Texas*, (1898), 85 Fed. 359, 29 C. C. A. 568; *Montclair Water Co.* v. *Town of Montclair* (1911), 81 N. J. Law 573, 79 Atl. 258; *Grant* v. *City of Davenport* (1873), 36 Iowa 396; *Maine Water Co.* v. *City of Waterville* (1900), 93 Me. 586; 45 Atl. 830, 49 L. R. A. 294; *Phillips* v. *City of Porthmouth* (1913), 115 Va. 180, 78 S. E. 651.

[4] The whole extent to which the holdings of those cases go on the question under consideration, is this: That where a continuing service is to be rendered to a municipality for which it has power to contract, and it does make a contract for such service which is reasonable and valid in other respects, and therein, either expressly or substantially, agrees to pay each year for such service the amount of the city taxes on certain property, and the amount so agreed upon appears to be only a fair return, or but a reasonably adequate consideration for the service rendered, the courts will hold such an agreement not to be, in truth, a tax exemption, but an agreement to make compensation for such service, and that, hence, such an agreement is enforceable, either by action to recover for the service rendered at the contract price therefor, which is the annual tax, or by set-off of the value of such service against the annual tax as it accrues, so long as such service continues under such contract.

In those cases the failure of consideration, caused by a holding of the tax exemption to be invalid, was a failure of

consideration for service actually rendered or to be rendered to the muncipality. In the cause before us it does not appear that the appellee has ever rendered or is obligated to render to the appellant, the city of Richmond, any service whatsoever. The only service which its predecessors in title rendered to the city of Manchester under the 1881 tax exemption covenant aforesaid was the water supply from the Manchester canal mentioned in the statement preceding this opinion. That ceased certainly following the annexation aforesaid which occurred in 1910. It does not appear in evidence whether such water supply was furnished in 1909 by appellee. If so, that fact might, upon proper pleading, if the court has jurisdiction of the matter in such a suit as this, furnish a basis for future decree in the cause in the court below for the relief of the appellee from the city taxes for that year, but no further.

[5] No authority has been cited before us extending the doctrine of the cases next above discussed to the point of holding that a municipality may, for any other valuable consideration than services to it such as aforesaid, contract away its taxing power and that such contract will be held not to be a tax exemption. And on principle, it will be at once perceived that such a broad power of contract would annul all constitutional provisions against exemption of property from taxation. It is not a question of the presence or absence of a valuable consideration to support tax exemptions against which such constitutional provisions are directed. There has seldom, if ever, arisen a case of tax exemption where such a consideration was not supposed by the taxing authority to exist at the time, and a supposedly sufficient consideration. But the evil of allowing such a power to exist, even in the legislature, is so manifest, that the rules of construction applicable to every alleged tax relinquishment, above adverted to, and the constitutional inhibitions which are now in force in Virginia against the exercise of such a power, have been adopted, and have their founda-

tion deep-seated in principles which are immutable under our form of government.

[6] The foregoing has proceeded upon the idea that the tax exemption in fact sought in the case before us was but an exemption for a reasonable time upon property reasonably certain as to its identity and value. Such, however, is not the case before us. The exemption sought is "forever"; it extends not only to certain property which existed in 1881, but to all which may have been placed thereon since, and also, to all "other property which may hereafter be added thereto, including capital added thereto or used or employed thereon." This would apply to the leaseholds heretofore created or which may hereafter be created touching the real estate and water rights aforesaid, as well as to the remainder of the property and doubtless to others besides the appellees who may now hold portions of the original property; and if the construction of said covenant for tax exemption contended for by appellee were upheld there would be established within the city upon the twenty-nine acres of real estate involved in the cause an *imperium in imperio* indeed, which we cannot hold to have been within the power of the city of Manchester to create under the authority of the act of assembly under which it made the covenant aforesaid; aside from any consideration of the power of the legislature under the Constitution of 1870 to have granted such authority.

For the foregoing reasons we are constrained to reverse the decree under review and to remand the cause for such further proceedings therein as may be proper, not in conflict with the views expressed in this opinion.

*Reversed.*